**SOCIALIST LABOR PARTY et al., Plaintiffs,**

**v.**

**James A. RHODES, etc., et al., Defendants.**

**Helen Marcia SWEETENHAM et al., Plaintiffs,**

**v.**

**James A. RHODES, etc., et al., Defendants.**

**Civ. A. Nos. 70–23, 70–24.**

United States District Court, S. D. Ohio, E. D.

July 29, 1970.

As Amended July 31, 1970.

Benjamin B. Sheerer and Jerry Gordon, Cleveland, Ohio, and Philip R. Moots, Columbus, Ohio, for plaintiffs.

Paul W. Brown, Atty. Gen., State of Ohio, for defendants.

Before PECK, Circuit Judge, and WEINMAN and KINNEARY, District Judges.

## OPINION

KINNEARY, District Judge.

These cases were consolidated for hearing, decision and order because they involve common questions of law concerning the election laws of Ohio. The plaintiffs also seek similar relief from the alleged unconstitutionality of these laws.

The jurisdiction of the Court was invoked and arises under Title 42, United States Code, Sections 1981, 1983 and 1988, 28 United States Code, Sections 1343(3) and (4), 2201, 2202, 2281 and 2283, and Amendments I and XIV of the United States Constitution.

This three judge court was designated pursuant to the determination that the requisites for the convening of such a court were present on the faces of the complaints.

The joint hearing was held on July 16, 1970. These actions are submitted on the complaints, the answers, the plaintiffs' motions for summary judgment filed in both actions, the defendant Paul W. Brown's motion for summary judgment filed in Civil Action 70-23, the memoranda, affidavits and appendices in support of all such motions and oral arguments.

The plaintiffs allege that certain sections of the Ohio election laws governing political parties and ballot position for party and independent candidates are unconstitutional in that they violate the First and Fourteenth Amendments to the United States Constitution.

In the Socialist Labor Party case plaintiffs allege that the following statutes are unconstitutional:

1. Section 3517.01, Ohio Revised Code, which defines a political party and requires that a party either receive seven percent of the vote cast in the last preceding election for its candidate for governor or its nominees for presidential electors, or that it file with the Secretary of State a petition signed by qualified electors who represent seven percent of

the total vote for governor or presidential electors at the last preceding election;

2. Sections 3517.02–3517.04, Ohio Revised Code, which specify the organizational structure of a party;

3. Section 3513.11, Ohio Revised Code, which requires that a political party elect a specified number of delegates and alternates to a state convention;

4. Sections 3505.10 and 3513.12, Ohio Revised Code, which require a state party to be part of a national political party which holds national conventions at which delegates elected in state primaries nominate presidential and vice-presidential candidates; and

5. Section 3517.07, Ohio Revised Code, which requires a political party file with county boards of election a "loyalty" oath.

The plaintiffs in the Sweetenham case allege that the following Ohio election statutes violate the First and Fourteenth Amendments to the Constitution of the United States:

1. Section 3513.25.7, Ohio Revised Code, which regulates the candidacy of independent candidates for district representative to congress; and

2. Section 3513.25.8, Ohio Revised Code, which regulates the candidacy of independent candidates for governor.

Each of these cases will be considered separately.

*The Political Party Case*

The facts surrounding the Socialist Labor Party's standing as a political party are not in dispute.[1] The Socialist Labor Party was founded as a national political party in 1890. Since 1892 it has run candidates for President of the United States in every presidential election. In 1964 it was on the ballot in sixteen states and conducted a write-in campaign in nine states; in 1968 it was on the ballot in fourteen states and conducted a write-in campaign in eight states, including Ohio.

The Ohio Socialist Labor Party has nominated and run candidates for political office in Ohio since 1895.[2] In 1968 the Socialist Labor Party's write-in candidate for President of the United States received 120 votes in Ohio. It has a membership of approximately 108 persons. Since the 1968 election the Socialist Labor Party has maintained its organizational structure and continued to participate in political activity within the State of Ohio.[3]

On April 26, 1970, the Socialist Labor Party held a convention in Cleveland, Ohio, at which it nominated John O'Neill as its candidate for United States Senator and Joseph Pirincin as its candidate for Governor of Ohio.[4] There is no evidence that any of the plaintiffs in the Socialist Labor Party case or its candidates have filed or attempted to file nominating petitions for the offices of Governor of Ohio or United States Senator.[5] The Socialist Labor Party seeks ballot status for

1. In 1968 the United States Supreme Court held that the Socialist Labor Party was a political party entitled to ballot position in Ohio. Williams v. Rhodes, 393 U.S. 23, 27–28, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); *Id.* at 40, 89 S.Ct. at 15 (Douglas, J., concurring). The Supreme Court refused to afford ballot position to the Socialist Labor Party through injunctive relief solely because the State of Ohio indicated it could not, at that late date, print and distribute ballots including the party's nominees for presidential electors.

2. Plaintiff's motion for summary judgment, Appendix A.

3. The uncontroverted affidavit of the plaintiff, Joseph Pirincin, states that the members of the Socialist Labor Party distributed over 100,000 pieces of literature in Ohio during 1969 and conducted political education classes. Further, its candidate for Mayor of Cleveland conducted a campaign during 1969 in which he appeared on numerous radio and television shows. Plaintiff's motion for summary judgment, Appendix C.

4. Affidavit of Joseph Pirincin, May 16, 1970.

5. Affidavit of Ted Brown, Secretary of State of Ohio, May 5, 1970.

its candidates for United States Senator and Governor of Ohio.[6]

The defendant Paul Brown, as Attorney General of Ohio, moved for summary judgment, contending that the action be dismissed on the ground that the Socialist Labor Party had no bona fide candidates for United States Senator and Governor of Ohio. This contention is wholly without merit. The complaint, filed January 28, 1970, alleged the Ohio State Committee of the Socialist Labor Party nominated John O'Neill as the Party's candidate for United States Senator. However, Article 7, Section 6, of the Socialist Labor Party's by-laws provides that the state convention of the Party shall make nominations for political office. At this convention, John O'Neill was nominated for United States Senator and Joseph Pirincin for Governor of Ohio. Thus, the defendants argue that this Court could not have granted relief in January, 1970 and should not now grant relief because the defendants have made inconsistent allegations.

■ To maintain this action the plaintiffs were not required to hold their state convention before filing suit. The names of their candidates for Governor and United States Senator are unimportant to the consideration of their asserted constitutional right to participate as a political party in the November, 1970 general election. The April, 1970 state convention is evidence that the Socialist Labor Party is a viable political party, not an indication that it is unworthy to participate in Ohio elections as defendants' brief suggests.

■ The complaint alleges that the Socialist Labor Party is an Ohio political party which intends to run candidates for the offices of United States Senator and Governor of Ohio in the November, 1970 general election but, unless relief is granted, it will be denied ballot position by certain unconstitutional Ohio election laws. The complaint, therefore, alleges facts sufficient to provide a basis for this Court to grant relief. Moreover, subsequent uncontroverted affidavits identify the particular candidates of the Party who desire ballot position. The Court finds these candidates were duly nominated by the Socialist Labor Party. Therefore, the Court denies defendants' motion for summary judgment.

■ We come now to the merits of the Socialist Labor Party case. For the purpose of disposing of the issue before us, it is unnecessary for this Court to decide or declare anything in respect of the constitutionality of Sections 3517.02, 3517.03 and 3517.04, Ohio Revised Code, because these sections were declared unconstitutional in Williams v. Rhodes, *supra*, at 24–26, 34, 89 S.Ct. at 7, *Id.* at 36–38, 89 S.Ct. at 13–14 (Douglas, J. concurring), and they stand unamended today. Nonetheless, this present three judge court, at the outset, recognizes the aforedeclared unconstitutionality of these statutes, both by a prior three judge court of this district and the United States Supreme Court.

■ In Williams v. Rhodes, *supra,* the Supreme Court stated that these sections, which were included in the complex of statutes considered by the three judge court in Socialist Labor Party v. Rhodes, 290 F.Supp. 983, 985, 990, are "a burden on voting and associational rights which we hold is an invidious discrimination, in violation of the Equal Protection Clause." Sections 3517.02–3517.04 require a political party to use a particular form of party organization. The state may set out guidelines describing desirable, and in proper circumstances, mandatory forms of organization, but they cannot prescribe a mode of organization which denies individuals the right to associate for the advancement of political beliefs and prevents qualified voters from casting their votes effectively. Williams v. Rhodes, *supra* at 30, 89 S.Ct. at 10.

■ Section 3513.11, Ohio Revised Code provides that a political party shall hold a state convention in even numbered

---

6. Affidavit of Joseph Pirincin, May 16, 1970.

years. It requires that all state officers, county chairmen and committee members, certain candidates, and 500 delegates attend. This statute, in effect, requires a complex state organization modeled after those of the Democratic and Republican Parties. The Supreme Court condemned such requirements in Williams v. Rhodes, *supra* at 25, 33, 89 S.Ct. at 7, 11.[7]

We now consider 3505.10 and 3513.12, Ohio Revised Code. Here again both of these statutes were held unconstitutional by the Supreme Court in Williams v. Rhodes, *supra*. After *Williams* these sections were amended.

Section 3505.10 was amended to provide space on the ballot for the names of independent candidates, who properly filed with the Secretary of the State of Ohio, to be printed on the presidential ballot and to provide a blank space on the presidential ballot for write-in candidates. Section 3513.12 was amended to provide that candidates at large to a party's national political convention could file a group petition with the Secretary of State of Ohio, thus reducing the number of signatures required on the petition.[8] Neither of these amendments cures the constitutional infirmity condemned by the Supreme Court in Williams v. Rhodes, *supra*.

We hold that Sections 3505.10 and 3513.12, Ohio Revised Code, are burdensome on the right of political association and the right of qualified voters to cast their ballots effectively in that they require a national party convention and that only the names of candidates nominated at a national party convention be printed on the presidential ballot. These sections, in effect, require Ohio political parties to maintain complex national organizations and to run candidates for the office of President of the United States as a condition for having the names and party affiliation of its candidates for state office printed on the ballot. They are thus a part of a restrictive statutory scheme regulating parties and elections which are violative of the First and Fourteenth Amendments to the United States Constitution.

Following the Supreme Court's decision in Williams v. Rhodes, *supra*, Section 3517.01, Ohio Revised Code, was amended to provide that:

> A political party * * * is any group which, at the last preceding regular state election, polled for its candidate for governor in the state or *nominees for presidential electors* at least seven [previously ten] per cent of the entire vote cast for *such office* or which filed with the secretary of state a petition signed by qualified electors equal in number to at least seven [previously fifteen] per cent of the total vote cast for governor *or nominees for presidential electors* at the last preceding election, declaring their intention of organizing a political party * * * and of participating in the next succeeding *primary* election *held in even numbered years, that occurs more than one hundred and twenty days after the date of filing.* [Italics indicate language included by 1969 amendment.]

The amendments to Section 3517.01, as they pertain to this case (1) reduced the number of petitioners required from fifteen to seven percent of the vote cast for governor or nominees for presidential electors at the last preceding election, (2) provided that the petitioners be a designated percentage of the vote cast for

---

7. The Court in Williams v. Rhodes, *supra*, considered Section 3513.12, Ohio Revised Code [and its companion Section 3505.10, Ohio Revised Code] an analogous provision to Section 3513.11 which requires that delegates and alternates must be elected to a national party convention. There are no substantial differences between the condemned organizational requirements contained in § 3513.12 and those contained in § 3513.11.

8. Previously each person seeking nomination at large to a national party political convention had to file a petition with the Secretary of the State of Ohio.

either governor or nominees for presidential electors, instead of governor and (3) increased the filing deadline for the petition from "ninety days before an election" to one hundred and twenty days before the next primary election.

The requirement that an association desiring recognition as a political party under Ohio's election laws either (1) have polled seven percent of the vote in the last preceding election for governor or nominees for presidential electors or (2) present a petition to the Secretary of State containing the signatures of qualified voters who represent seven percent of the votes cast in the last preceding election for governor or nominees for presidential electors, is still patently burdensome.

■ We hold that the requirement of a petition containing signatures of qualified voters equal at least to seven percent of the total vote last cast for governor or presidential electors, which is substantially more demanding than the comparable provisions of other states,[9] is unconstitutional.

In oral argument the defendants asserted that the seven percent requirement was constitutional because it was enacted to protect the state's interest in having candidates on the ballot who (1) have made a substantial showing of voter interest at a time prior to the election and (2) are bona fide good faith candidates for elective office. Further, they assert the seven percent requirement protects the ballot and electors from frivolous or publicity seeking candidates, and, with reference to political parties, the fact of collecting signatures is an indicia of the requisite minimal political organizational ability the state may require a party to manifest. The Court does not necessarily quarrel with the defendants' contention that it may constitutionally seek to preserve these interests. Nevertheless, the manner in which they seek to do so is unconstitutional. Ohio's requirements are far too burdensome on

plaintiffs' right to political association and the right of qualified voters to cast their ballots effectively.

Justice Harlan noted in his concurring opinion in Williams v. Rhodes, *supra*, at 47 n. 9, 89 S.Ct. at 19, that forty-two states had petition signatory requirements of one percent or less and that forty-nine states required signatures of five percent or less. Ohio's newly enacted seven percent requirement is thus still a much more burdensome restriction on third parties than any of the other forty-nine states impose. Rather than requiring a showing of voter interest, the seven percent requirement prohibits third parties from participating in elections.

The interests the state seeks to preserve may be protected without resort to a statutory scheme so restrictive that a small third party with a long and continuing history of political activity has no objective opportunity to participate in the elective process.

The fear of frivolous candidates and the bed sheet ballot is shown to be only meretricious by the history of Ohio's elections prior to 1952. *See,* Williams v. Rhodes, *supra* at 47 n. 9, 89 S.Ct. at 19.

So far we have considered the specific sections of the Ohio election laws which the Supreme Court has held are unconstitutional as well as those sections which the Ohio Legislature amended after the decision in Williams v. Rhodes, *supra*. At this time we deem it appropriate to consider the overall pattern of election laws governing third parties in Ohio.

In Williams v. Rhodes, *supra*, at 25, 89 S.Ct. at 7, the Supreme Court, after setting out the general outlines of Ohio election laws, said:

> The State of Ohio in a series of election laws has made it virtually impossible for * * * an old political party, which has a very small number of members, to be placed on the state ballot * * *.

As previously noted, the Socialist Labor Party began its political activity in Ohio

---

9. See Appendix D to plaintiff's memorandum in support of motion for summary judgment.

in 1895 and has continued active participation in Ohio politics to the present time. During the period 1895 to 1946, Socialist Labor Party candidates for various state and federal offices gained ballot position. Between 1948 and 1952 the Ohio Legislature enacted the statutory scheme which existed until 1969 when the Ohio Legislature made some pretense of conforming to the pronouncement of unconstitutionality in *Williams*.

Justice Harlan, in his concurring opinion in Williams v. Rhodes, *supra*, at 47, n. 9, 89 S.Ct. at 19, succinctly sets out the circumstances surrounding the genesis of Ohio's restrictive election laws:

> Before [1952], independent candidates had been granted a place on the ballot if they could gather the signatures of registered voters in the number of 1% of those voting at the preceding gubernatorial election and present their petitions 60 days before the general election. The State's experience under this unexacting regime is instructive. Voting statistics compiled by Ohio's Secretary of State reveal that since 1900 no more than seven parties have appeared on the ballot to compete for a major statewide or national office. And even this number was not attained after 1908. During the last 10 years of the old regime, there are only two third-party candidates of record. The State took effective action only after Electors pledged to Henry A. Wallace gained some 30,000 votes out of the 3,000,000 cast in 1948. Since Harry S. Truman carried the State by some 7,000 votes, the Wallace vote might well have been decisive if it had increased marginally.

The changes in Ohio election laws effectuated in the 1948–1952 period dramatically, and adversely, affected the rights of individuals to associate for the advancement of political beliefs. They also deprived qualified voters of the right to effectively cast their ballots for candidates other than those running as Democrats or Republicans. From 1952 to date there was not one independent or third party candidate on the Ohio ballot running for a state office.[10]

■ It is thus clear from the history of Ohio's election laws that since 1952 they have effectively precluded persons in Ohio from exercising their rights to political association outside the Democratic and Republican parties. To justify such a restriction on an important, constitutionally guaranteed right, the state must show a compelling state interest. It has not done so. Everything that has happened in the Ohio electoral process since 1952 suggests that no compelling state interest justifies the perpetuation of the present statutory entanglement.

■ The State of Ohio has an obligation to protect the right of political association guaranteed all persons through the First and Fourteenth Amendments. The state has not afforded this protection. The 1969 amendments to the election laws merely perpetuates the restrictive laws enacted between 1948 and 1952.[11] The overall effect of these laws is still to deny to plaintiffs their con-

---

10. Plaintiffs' Motion for Summary Judgment, Appendix A. Nominees for presidential electors pledged to George Wallace were placed on the Ohio ballot as a result of Williams v. Rhodes, *supra*. There have been no other independent or third party candidates since 1952 for a national office.

11. Section 3517.01, Ohio Revised Code, was amended to reduce the signature requirement on petitions for third party ballot recognition from fifteen percent to seven percent of the voters for governor or nominees for presidential electors. Section 3517.01 changed the filing date from ninety days before the election to one hundred and twenty days before the primary election preceding the general election. In addition, Section 3517.013 was added permitting persons previously affiliated with a recognized political party to be candidates of a newly recognized party.

Section 3517.014 exempts candidates of newly formed parties from the first primary following recognition of the party. Sections 3517.015 and 3517.016 permit any qualified voter to sign the petition for party recognition and vote in the first

stitutional right of political association. Although the number of qualified voter signatures on the petition for recognition as a party was reduced from fifteen to seven percent, the requirement still constitutes a significant barrier to ballot position. More importantly, there remains the complex set of regulations governing party organization explicitly condemned in *Williams* by the Supreme Court.

Rather than assuring the constitutional right of political association, the Ohio election laws make it virtually impossible for third party candidates and independent candidates to gain ballot position. This established fact cannot be turned aside or reasoned away.

Plaintiffs' third cause of action alleges that Section 3517.07, Ohio Revised Code, abridges their right to political association. Section 3517.07 provides in relevant part:

> Any party or group desiring to have a place on the ballot shall file with the Secretary of State and with the board of elections in each county in which it desires to have a place on the ballot an affidavit * * * under oath stating that it does not advocate, either directly or indirectly, the overthrow, by force or violence, of our local, state or national government; that it does not carry on any program of sedition or treason by radio, speech or press; that it has no connection with any foreign government or power; that it has no connection with any group or organization so connected or so advocating, either directly or indirectly, the overthrow, by force or violence, of our local, state or national government or so carrying on a pro-

gram of sedition or treason by radio, speech, or press.

> \* \* \* \* \* \*

> This section does not apply to any political party or group which has had a place on the ballot in each national and gubernatorial election since the year 1900.

Plaintiffs contend that Section 3517.07 (1) bars from the ballot political parties which abstractly advocate the overthrow of the government by force and violence, (2) abridges associational rights, (3) is overly broad, (4) is impermissibly vague, (5) violates due process because it places the burden of proving loyalty on the political party and (6) violates the Equal Protection Clause by excepting the Democratic and Republican Parties from its ambit.

 It is well established that loyalty oaths which fail to distinguish between abstract advocacy and advocacy directed at promoting unlawful action must be stricken as unwarranted invasions of free speech. Keyishian v. Board of Regents, 385 U.S. 589, 599–600, 87 S.Ct. 675, 17 L.Ed.2d 629 (1960); Brandenburg v. Ohio, 395 U.S. 444, 447–448, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969).

 Section 3517.07 is overly broad on its face in that it attempts to prohibit mere advocacy. However, the Ohio Supreme Court, in State ex rel. Beck v. Hummel, 150 Ohio St. 127, 80 N.E.2d 899 (1948) construed the section narrowly. That Court recognized a distinction between attempt and mere advocacy:

> One who would *attempt* by any means to overthrow the government by force would be a traitor and there would be justification for dealing with him in

---

party primary without regard to previous political affiliation.

With the exception of the seven percent requirement and the filing date for the petition these changes are ameliorative of the prior restrictive election laws. Section 3505.10 was amended in conformity with *Williams* to permit write-in candidates on the presidential ballot.

However, none of the other laws noted in *Williams* to be restrictive were amended to comply with the clear meaning of the Supreme Court's opinion. Sections 3517.02 through 3517.04, Ohio Revised Code, remain law. Section 3505.10 still requires a national convention to choose a presidential candidate, although new parties are apparently exempted from the first primary following their recognition. Section 3517.014, Ohio Revised Code.

accordance with the enormity of his offense. The government has the inherent power to defend and protect itself.

To advocate an entire [and permissible] change in our form of government is an entirely different matter. State ex rel. Beck v. Hummel, *supra* at 137, 80 N.E.2d at 904.

The Ohio Supreme Court went on to hold that the mere fact that certain members of the Progressive Party had been or were members of the Communist Party did not constitute a connection with any group or organization advocating the overthrow of the government within the meaning of the Ohio loyalty oath law. *Id.* at 258, 80 N.E.2d 899.

The United States Supreme Court in Gerende v. Board of Supervisors, 341 U.S. 56, 71 S.Ct. 565, 95 L.Ed. 745 (1951) recognized the constitutionality of an oath requirement for candidates for elective office, if the oath is limited to the assertion that the candidate is:

> not a person who is engaged in one way or another in the *attempt* to overthrow the government by *force or violence,* and that he is not knowingly a member of an organization engaged in such an attempt. [Emphasis added.]

The *Gerende* decision has been cited approvingly by the Supreme Court on many occasions. *See, e.g.,* Whitehill v. Elkins, 389 U.S. 54, 57–58, 88 S.Ct. 184, 19 L.Ed. 2d 228 (1967); Speiser v. Randall, 357 U.S. 513, 527, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958).

The Court holds that Section 3517.07, Ohio Revised Code, narrowly construed to require an oath that (1) the party is not engaged in an attempt to overthrow the government by force or violence, (2) the party does not carry on a program of sedition or treason as defined by the criminal law and (3) the party is not knowingly associated with a group attempting to overthrow the government by force or violence, is constitutional.

### The Independent Candidates Case

Plaintiff Marcia Sweetenham is an independent candidate for Governor of Ohio in the November 1970 general election.[11] Plaintiff Robert Stapleton is an independent candidate for Congressman from Ohio's Twenty-Second Congressional District in the November 1970 general election.[12] Plaintiff Jean Tussey is a citizen and registered voter who supports the candidacies of plaintiffs Sweetenham and Stapleton.

Plaintiffs assert the unconstitutionality of that part of Section 3513.258, Ohio Revised Code, which requires independent candidates for statewide office file with the secretary of state a petition including the signatures of at least two hundred electors from each of at least thirty counties, and limits the total number of signatures obtained from qualified voters in any one county to no more than one fourth of those needed on the nominating petition.

Ohio has eighty-eight counties. In the 1960 census Ohio had a total population of 9,705,336 persons. Over two-thirds of Ohio's population lives in the sixteen largest counties. Over fifty percent of Ohio's population lives in the seven largest counties.

The thirty county requirement results in a marked dilution of the voting strength of urban voters as opposed to rural voters, violating the principle of one man, one vote. *See,* Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). Under Section 3513.258 the fifty percent of Ohio's qualified voters living in its seven largest counties are disabled from nominating independent candidates for statewide office.

In Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969) the Supreme Court struck down an Illinois statute which required independent candidates for presidential electors to secure

---

11. Affidavit of Marcia Sweetenham.

12. *Ibid.*

two hundred signatures in each of fifty counties.[13]

The state has presented no compelling reason for these discriminatory restrictions on the right to nominate independent candidates for state office. This Court determines there is no such compelling state interest. As the Supreme Court said in Moore v. Ogilvie, *supra* at 818–819, 89 S.Ct. at 1496:

It is no answer to the argument under the Equal Protection Clause that this law was designed to require state support for a new political party rather than support from a few localities. This law applies a rigid, arbitrary formula to sparsely settled counties and populous counties alike, contrary to the constitutional theme of equality among citizens in the exercise of their political rights. *The idea that one group can be granted greater voting strength than another is hostile to the one man, one vote basis of our representative government.* [Emphasis added.]

■ The Court further holds that the provisions of Section 3513.258, Ohio Revised Code, which require a petition to contain signatures of at least 200 qualified voters from each of thirty counties is unconstitutional in that it is violative of the principle of one man, one vote. Moore v. Ogilvie, *supra*; Socialist Workers Party v. Hare, 304 F.Supp. 534 (E.D. Mich.1969).

■ The requirement that no more than one fourth of the signatures necessary be obtained from any one county is similarly unconstitutional. It reduces the voting strength of voters located in Ohio's largest counties. There is no compelling state interest in limiting the number of qualified voters in any one county who may sign a candidate's petition. Each voter is entitled to the full weight of his vote. Moore v. Ogilvie, *supra.*

■ The state cannot use county lines as a determinant of which voters may exercise rights associated with the franchise.

Citizens, not history or economic interests, cast votes. Considerations of area alone provide an insufficient justification for deviations from the equal-population principle. Again, people, not land or trees or pastures, vote. Reynolds v. Sims, 377 U.S. 533, 580, 84 S.Ct. 1362, 1391, 12 L.Ed.2d 506 (1964).

Plaintiffs allege that the part of Section 3513.257, Ohio Revised Code, which requires an independent candidate for the office of representative to Congress to file a nominating petition signed by four percent of the number of electors who voted for governor or presidential electors in the district at the last preceding regular state election and the similar part of Section 3513.258 which requires signatures of qualified voters representing four percent of the total state vote for governor or nominees for presidential elector in the last preceding election are unconstitutional.

This same requirement for independent candidates was discussed in Socialist Labor Party v. Rhodes, *supra,* 290 F. Supp. at 994 (Kinneary, J. concurring in part and dissenting in part):

During the fifteen year period prior to 1947, participation in the electoral process by independently nominated candidates was neither substantial *nor* disruptive. Nevertheless in that year the Ohio General Assembly began a series of changes in the election laws which ultimately resulted in the complete elimination of independent and third party voters and candidates from Ohio's political arena.

Since that opinion the Ohio Legislature has reduced the petition signature requirement for independent candidates from seven to four percent. However, the state has shown no compelling state interest in raising the one percent requirement to seven percent or to the present four percent, nor has it demon-

13. Illinois has 102 counties.

strated a compelling reason for the four percent requirement.

■ The state contends, properly, that it has an interest in a nominating procedure for independent candidates which requires a substantial showing of voter interest evidenced prior to the election. Further, it has a right to keep frivolous candidates off the ballot and wherever constitutionally possible to avoid the use of the "bed sheet" ballot which may result in voter confusion. The problem with these arguments is that when Ohio had a one percent signature requirement all of these conditions were satisfied. *See,* Williams v. Rhodes, 393 U.S. 23, 47 n. 9, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) (Harlan, J., concurring). The state has the burden of justifying the four percent requirement and the Court holds that it has failed to do so.

■ In addition to denying the right of association and the right of qualified voters to cast their ballots effectively, the four percent requirement invidiously discriminates between independent and party candidates. Independent candidates for Congress in plaintiff Stapleton's district must obtain at least 5,572 valid signatures. But party candidates need obtain only one hundred signatures. Independent candidates for state wide office must obtain at least 158,388 valid signatures, whereas party candidates need obtain only 1,000 signatures. The state has not demonstrated a compelling interest supporting the differential treatment afforded independent and party candidates. Mere membership in a political party does not assure that a candidate has a substantial electoral support. A candidate collecting 100 or 1,000 signatures may well be running without any party or electoral support. If it is assumed that party membership of a candidate gives the state some intangible guarantee of worthiness for ballot position, this consideration does not merit such

disproportionate requirements for signatures on a nominating petition.

■ Plaintiffs allege that those parts of Sections 3513.257 and 3513.258, Ohio Revised Code, which require nominating petitions to be filed "not later than 4:00 P.M. of the ninetieth day before the first Tuesday after the first Monday in May immediately preceding [the] general election" are unconstitutional.

The state has an interest in having persons who otherwise qualify for ballot position officially become candidates at a designated time prior to an election. In addition, the state may reasonably require that all persons seeking elective office become officially declared candidates on or before a certain date preceding an election. One may not play dog in a political manger by withholding his determination of candidacy until after party candidates are chosen by the primary process.

■ The plaintiffs Sweetenham and Stapleton herein had not taken steps to become candidates prior to the May 1970 primary election. Plaintiff Sweetenham had obtained 1,600 signatures on her nominating petition by June 29, 1970.[14] Plaintiff Stapleton had obtained 2,455 signatures on his nominating petition by June 29, 1970.[15] Neither plaintiff has filed or tendered a nominating petition with the designated state or county official. Candidates for parties which participated in the primary election were chosen in the May 1970 primary election. The Socialist Labor Party candidates whom this Court has held are entitled to ballot position were chosen on April 26, 1970.[16]

The Court holds that plaintiffs Sweetenham and Stapleton, who did not officially declare their candidacy at or before the time Ohio requires political parties to choose their nominees, are not entitled to ballot position.

14. Affidavit of Helen Marcia Sweetenham.

15. Affidavit of Sydney Robert Stapleton.

16. Affidavit of Joseph Pirincin, May 16, 1970.

Therefore, the court denies plaintiffs' prayer for injunctive relief placing them on the ballot.

### ORDER

It is hereby ordered:

1. That the defendants are permanently enjoined from enforcing Sections 3517.01, 3505.10, 3513.11, 3517.02, 3517.-03, 3517.04 and 3513.12, Ohio Revised Code, insofar as these sections or provisions or parts thereof deprive plaintiffs of constitutionally guaranteed rights as adjudged in this Opinion;

2. That the Socialist Labor Party by name, and its candidate for Governor, Joseph Pirincin, and its candidate for United States Senator, John O'Neill, all be placed upon the ballot for the 1970 Ohio general election;

3. That the defendants are permanently enjoined from enforcing those portions of Sections 3513.257 and 3513.-258, Ohio Revised Code, which deprive plaintiffs of constitutionally guaranteed rights as adjudged in this Opinion.