In the Matter of Nomination Petition of
Phil BERG, Democratic Candidate
for the Office of Governor.

Appeal of Louis B. KOZLOFF,
Petitioner.

Commonwealth Court of Pennsylvania.

Heard March 30, 1998.
Decided April 7, 1998.
Publication Ordered April 21, 1998.

John J. Connelly, Jr., Harrisburg, for petitioner.

Samuel C. Stretton, West Chester, for respondent.

DOYLE, Judge.

Before this Court is the petition to set aside the nomination petition of Phil Berg as a candidate, in the primary election of the Democratic Party, for the office of Governor. Additionally before the Court is Berg's motion to dismiss the petition to set aside based on a challenge to Section 912.1(3) of the Election Code,[1] on constitutional grounds.

The challenge to Berg's nomination petition alleged that, although Berg had accumulated over 3000 signatures statewide, he failed to obtain 100 valid signatures from Democratic electors of 10 counties within the Commonwealth. Specifically, the petition alleged that although Berg had 100 signatures from 9 counties, he did not have 100 valid signatures from Dauphin County, the re-

quired tenth county. First, however, we will address Berg's motion to dismiss based on constitutional grounds, because, if we conclude that Section 912.1(3) is unconstitutional, we need not address the issue of whether Berg complied with that Section.

Section 912.1 of the Election Code provides as follows:

> Candidates for nomination of offices as listed below shall present a nominating petition containing at least as many valid signatures of registered and enrolled members of the proper party as listed below:
>
> . . . .
>
> (3) Governor: Two thousand including at least one hundred from each of at least ten counties.

25 P.S. § 2872.1(3). In his petition to dismiss the challenge to his nomination petition, Berg alleges that the requirement of 100 signatures from 10 counties does not in any way reflect the relationship of the population in each county. Therefore, because less-populous counties of this Commonwealth have fewer electors, the signatures of those electors are more "valuable" than those of electors of more populous counties such as Philadelphia or Allegheny.[2] Thus, Berg argues, application of Section 912.1(3) of the Election Code dilutes the signature of the elector in the more populous areas in violation of the "one man-one vote principle," announced by the United States Supreme Court in *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

■ At the outset, we note that when assessing the merits of a constitutional challenge to a provision of a state's election code, a court

> must first consider the character and magnitude of the asserted injury to the rights

---

1. Act of June 3, 137, P.L 1333, *as amended*, 25 P.S. § 2872.1(3).

2. According to the results of the 1990 Census contained in the most recent edition of *The Pennsylvania Manual*, Volume 113, the top ten counties by population are Philadelphia (1,585,577), Allegheny (1,336,449), Montgomery (678,111), Delaware (547,651), Bucks (541,174), Lancaster (422,822), Chester (376,396), Westmoreland (370,321), York (339,574), and Berks (336,523).

Moreover, by counting only the number of Democratic electors registered to vote in the 1996 General Election, the top ten most populous counties are Philadelphia (689,880), Allegheny (517,580), Montgomery (139,401), Westmoreland (130,406), Bucks (124,270), Luzerne (101,503), Delaware (93,686), Lackawanna (85,436), Berks (84,574), and Erie (84,445). The Democratic population of these counties equals approximately 59% of the registered Democratic electors in the Commonwealth.

protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights.

*Council of Alternative Political Parties v. Hooks,* 121 F.3d 876 (3d Cir.1997).

■■■ In addressing Berg's challenge, we must first determine what level of review is given to Section 912.1(3). It is well settled that laws which affect a fundamental right, such as the right to vote, or discriminate against a suspect class of citizens, are subject to strict scrutiny. *Brown v. Borough of Mahaffey,* 35 F.3d 846 (3d Cir.1994). Under a strict scrutiny analysis, the burden is on the government to demonstrate that the law is narrowly tailored to achieve a compelling governmental interest. *United States v. Burroughs,* 897 F.Supp. 205 (E.D.Pa.1995). Conversely, if a law does not significantly affect a fundamental right or involve a suspect class, it is subject to a rational basis review by the Court. *Cavanaugh v. Schaeffer,* 65 Pa.Cmwlth. 620, 444 A.2d 1308 (1982). Under this standard, it is the plaintiff who bears the heavy burden of overcoming the presumption that there exists a rational relationship between the statute and a legitimate governmental interest. *Hahn v. United States,* 757 F.2d 581 (3d Cir.1985).

In arguing for application of the strict scrutiny standard, Berg initially argues that the current requirements of the Election Code violate the one man-one vote principle, and thus affects a fundamental right, *i.e.,* the right to vote. In support of his argument, Berg initially points to the United States Supreme Court decision in *Moore v. Ogilvie,* 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969). In *Moore,* the Court examined a constitutional challenge to an Illinois law requiring 25,000 signatures statewide, including 200 signatures from 50 of the state's 102 counties before a candidate could be placed on the ballot in the primary election for the office of President of the United States. The population in Illinois was such that 93.4% of the state's population resided in 49 of the counties. Because 6.6% of the remaining population residing in the remaining 53 counties could place a candidate on the ballot, the Court ruled that the law unconstitutionally diluted the "vote" of the more populous counties in the state. *Moore* has been used as support for striking down several provisions of other states' election codes. *See Socialist Labor Party v. Rhodes,* 318 F.Supp. 1262 (S.D.Ohio 1970), *appeal dismissed,* 409 U.S. 942, 93 S.Ct. 282, 34 L.Ed.2d 214 (1972) (striking down an Ohio statute requiring independent candidates to have 200 signatures from at least 30 of the state's 80 counties); *Socialist Workers Party v. Rockefeller,* 314 F.Supp. 984 (S.D.N.Y.), *aff'd,* 400 U.S. 806, 91 S.Ct. 65, 27 L.Ed.2d 38 (1970) (striking down a New York law requiring at least 50 signatures from each county in the state). The Court's concern in the above cases involves the apparent "veto" power granted to a minority of the population to frustrate the apparent will of the majority as evidenced by a candidates apparent support in populous counties. *See Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

However, in *Valeo,* the Court upheld a portion of the federal financing laws which required candidates to run in 20 state primary elections in order to receive primary election funds. In doing so, the Court noted that, in *Moore,* Illinois attempted to ensure that a candidate had statewide support before being placed on the ballot. The Illinois statute at issue in *Moore* permitted 7% of the state's population residing in the state's least populated 53 counties, to "block" the nomination of a candidate, *assuming* that all of them refused to sign a candidate's nomination petition. In the present case, the top ten most populated counties in Pennsylvania comprise only approximately 59% of the Democratic electors in the Commonwealth. The remaining 41% are distributed within the other 57 counties of the Commonwealth. Thus to successfully "block" the nomination of a candidate in Pennsylvania, (*i.e.* if a candidate collected 100 signatures from only 9 of the top 10 counties and could not obtain 100 signatures in any one of the remaining 58 smaller

counties), it would take approximately 42% of the state's Democratic Electors remaining, all refusing to sign the candidate's petition, to defeat the candidate's bid for nomination. It is obvious, therefore, that Pennsylvania's system is not nearly the alleged draconian plan struck down in Illinois, in *Moore*.

Additionally, the present case is easily distinguished from *Moore*, and the other cases cited above which followed *Moore*, in another significant respect. In all of those cases, both the number and the percentage of counties from which signatures were required was far greater than that imposed by Section 912.1(3). In *Moore*, the statute at issue required 200 signatures from 50 of the state's 102 counties, or 49% of the counties in the state. In *Rockefeller*, the statute required 200 signatures from 30 of the 88 counties in the state, or 34% of the counties in the state. By contrast, Section 912.1(3) requires 100 signatures from only 15% of the counties within the Commonwealth.

■ Moreover, the case now before the Court does not implicate the "one man-one vote" principle. As this Court stated in *Cavanaugh*,

The one person-one vote principle, upon which the candidate relies, as initially announced in *Baker v. Carr* was designed to remedy the unequal representational rights of voters. "The first principle inherent in our republican form of government is that individual citizens submit to rule by legislative fiat enacted by a majority of a popularly elected legislative body working within a constitutional framework. When the representatives to that legislative body are malapportioned among the several districts within the political unity,

then the voting strength of the individual citizens in these subdivisions is of unequal weight."

*Cavanaugh*, 444 A.2d at 1312 (quoting *Buchanan v. Rhodes*, 249 F.Supp. 860 (N.D.Ohio 1966), *appeal dismissed*, 385 U.S. 3, 87 S.Ct. 33, 17 L.Ed.2d 3 (1966)). The present case does not involve an issue of unequal *representational* rights. The candidate is seeking his political party's nomination for the executive office of Governor. Clearly the governor is not a legislator in the sense that he does not espouse the cause of a particular constituency, but is rather the chief executive of the Commonwealth as a whole. Therefore, the representational concerns at the core of the one man-one vote principle are not present here and, thus, that principle does not apply.[3] Therefore, no fundamental rights are affected by the 10-county requirement.

Furthermore, the rational basis standard seems more applicable in this case given the greater deference and leeway extended to state elections as compared with the scrutiny of federal election cases. *See Cavanaugh*, 444 A.2d at 1312 n. 7. Because we conclude that the one man/one vote principle is not involved in the present case, therefore, neither is a fundamental right. Therefore, we must examine Section 912.1(3) under the rational basis standard.[4] As such, it is Berg's burden to demonstrate that Section 912.1(3) is not rationally related to a legitimate governmental interest. *Hahn*.

■ Applying the rational basis test, it is clear that the state has several legitimate interests in the signature requirements of Section 912.1(3), namely keeping the ballot

---

3. We note that we are not presented with a case involving voting power, but only "nominating power." We are mindful of the words of Justice Stewart in *Moore* in which he concluded that

I cannot join in the Court's casual extension of the "one voter, one vote" slogan to a case that involves neither voters [or] votes ...

*Moore*, 394 U.S. at 818, 89 S.Ct. at 1495–96 (Stewart, J., dissenting). Likewise, in the present case, signing a nomination petition does not obligate any individual to vote for that candidate, but is meant to demonstrate only that the candidate has sufficient support throughout the state to ensure that his or her candidacy is not entirely frivolous and that the candidate has at least some

area wide, if not statewide, appeal, which, of course, is a most legitimate state interest.

4. We note that, even if Section 912.1.(3) were to be considered under the strict scrutiny standard, the state's interests in keeping an organized ballot and requiring a candidate to demonstrate sufficient statewide support would be sufficiently compelling to uphold the statute. *See Cavanaugh* (citing *American Party of Texas v. White*, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974); *Lubin v. Panish*, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974); *Jenness v. Fortson*, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971)).

free from chaos and requiring a modicum of area wide, if not statewide, support for a candidate. First, Section 912.1(3) ensures that the ballot will not be cluttered with candidates having only small, local support. Second, and perhaps more important to this case, it is clear that the 10–county requirement is designed to ensure that candidates do not merely obtain signatures from the most populous counties of the Commonwealth. No Gubernatorial candidate could satisfy the requirements of Section 912.1(3) without obtaining signatures of electors who are residents of at least some third through eighth class counties.[5] Section 912.1(3), is, therefore, rationally related to the furtherance of these objectives.

In response, Berg asserts that the state's interest in keeping an orderly ballot and requiring a candidate to demonstrate statewide support is neither a compelling nor legitimate governmental interest because there are alternative ways to achieve such a purpose. We disagree. Any possible alternative to the county requirement would require either a "flat" number of signatures to have a candidate's name placed on the ballot, or would require signatures from a subdistrict in the state that would have a population base. Clearly, this would not provide sufficient evidence of statewide support as a candidate could easily obtain twice the number of signatures currently required in either Allegheny or Philadelphia County alone.

Berg suggests that the Commonwealth could achieve the same purpose by requiring a certain number of signatures from each congressional district because congressional districts are established on a population basis. Although it is certain that the population is more evenly divided in the congressional districts, this alternative would not achieve the same purpose as the current system. Pennsylvania has 20 congressional districts. Assuming arguendo that the Commonwealth adopted a system whereby a candidate needed to obtain 100 or more signatures from 10 of the 20 congressional dis-

tricts (of course this would be a greater percentage, 50%, than the amount of counties currently required, which is approximately 15% or 10 out of 67 counties), a candidate could easily meet that requirement without evidencing statewide support. For instance, Philadelphia County encompasses the first, second, and third congressional districts. In addition, Allegheny County encompasses the fourth, fourteenth, eighteenth, and twentieth congressional districts. Thus, by collecting signatures in two counties of the Commonwealth, a candidate would have signatures from seven of the ten required congressional districts. This would eviscerate one of the purposes underlying Section 912.1(3) of the Election Code. Thus, while it is clear that Section 912.1(3) does result in a minimal amount of inequality throughout the Commonwealth, this minimal inequality is insufficient to support a finding that the statute fails the rational basis test. *See Donatelli v. Mitchell,* 2 F.3d 508 (3d Cir.1993). We, therefore, conclude that Berg has failed to carry his heavy burden of demonstrating that Section 912.1(3) is not rationally related to the furtherance of the Commonwealth's interests concerning the ballot.

Accordingly, we hold that Section 912.1(3) of the Election Code is constitutional, and we therefore turn to the petition to set aside Berg's nomination petition which alleges that he did not satisfy the requirements contained in that section.

At the hearing held on March 30, 1998, Berg was present and represented by counsel. Following a colloquy on the record, Berg, through his counsel, conceded that his petition did not contain the valid signatures of 100 Democratic electors in Dauphin County. On the basis of this concession, and our conclusion that Section 912.1(3) of the Election Code is constitutional, this Court will enter an order setting aside the nomination petition filed by Phil Berg, and ordering the Secretary of the Commonwealth to remove

---

**5.** There is only one first class county, Philadelphia, and only one second class county, Allegheny. There are three second class A counties, Montgomery, Delaware, and Bucks. Thus, assuming that a candidate obtained 100 signatures

from registered voters of the candidate's party in these five counties, he would still need 100 signatures from the electors in 5 of the other 62 counties designated as third class or lower.

Phil Berg's name from the Democratic ballot for the office of Governor for the May 1998 primary.

### *ORDER*

**AND NOW,** this 7th day of April, 1998, the petition to set aside the nomination petition in the above-captioned matter is hereby GRANTED.

The Secretary of the Commonwealth is directed not certify the name of Phil Berg as a candidate for nomination to the office of Governor in the Democratic Primary Election scheduled for May 19, 1998.

The Chief Clerk is directed to notify the parties hereto and their counsel of this order and also to certify a copy thereof to the Secretary of the Commonwealth.

Each party is to bear his own costs.