Stewart, J.
 

 For convenience the relators in case No. 31496 will hereinafter be referred to as relators, the appellant in case No. 31498 will hereinafter be referred to as appellant, and the respondent in case No. 31496, who is also appellee in case No. 31498, will hereinafter be referred to as the secretary.
 

 In order to logically consider the questions before us we must decide case No. 31498 before proceeding with case No. 31496, for the reason that all counsel agreed in oral argument that if the finding of the secretary in case No. 31498 is sustained, the petition in case No. 31496 must be dismissed.
 

 Section’ 4785-100a, General Code, reads as follows:
 

 “No political party, or group, which advocates,, either directly or indirectly, the overthrow, by force or violence, of our local, state or national government or which carries on a program of sedition or treason by radio, speech or press or which has in any manner any connection with any foreign government or power
 
 *134
 
 or which in any manner has any connection with any group or organization so connected or so advocating the overthrow, by force or violence, of our local, state or national government or so carrying on a program of sedition or treason by radio, speech or press, shall be recognized or be given a place on the ballot in any primary or general election held in the state of Ohio or in any political subdivision thereof.
 

 “Any party, or group, desiring to have a place on the ballot, shall file with the Secretary of State of Ohio, and with the board of elections in each county in which it desires to have a place on the ballot, an affidavit made by not less than ten members of such party, not less than three of whom shall be executive officers thereof, under oath stating that it does not advocate either directly or indirectly the overthrow, by force or violence, of our local, state or national government; that it does not carry on any program of sedition or treason by radio, speech or press; that it has no connection with any foreign government or power; that it has no connection with any group or organization so connected or so advocating either directly or indirectly, the overthrow, by force or violence of our local, state or national government or so carrying on a program of sedition or treason by radio, speech or press.
 

 ‘ ‘ Said affidavit shall be filed not less than six months nor more than nine months prior to the primary or general election in which the party, or group, desires to have a place on the ballot. The Secretary of State shall investigate the facts appearing in the affidavit and shall within sixty days after the ’ filing thereof find and certify whether or not this party, or group, is entitled under this section to have a place on the ballot.
 

 “Any qualified member of such party, or group, or any elector of this state, may appeal from the finding of the Secretary of State to the Supreme Court of the state of Ohio.”
 

 
 *135
 
 There is no dispute that not less than 10 members of the Ohio Wallace-for-President Committee timely filed an affidavit strictly complying with the provisions of the above statute.
 

 The secretary investigated the facts appearing in the affidavit and within 60 days after the filing thereof found and certified that the Ohio Wallace-for-President group is not entitled to have a place on the ballot.
 

 Pursuant to the statute the appeal from that finding is properly before us.
 

 It is claimed by appellant that the finding of the secretary should be reversed because it was made without any evidence or proper basis; that it was arbitrary; that it was made without any hearing; and that no opportunity was given to the signers of the affidavit to reply to any charges made against them or to cross-examine the investigator utilized by the secretary in his investigation.
 

 The basis for the secretary’s finding was a report of George S. Houston, chief of investigation, and consisted of three hand-written pages concerning 11 per- , sons. These persons signed the affidavit and three of them are among the relators in case No. 31496. The notations concerning them are briefly as follows:
 

 Calvin S. Hall, professor of languages at Western Reserve University. Sponsor American Slav Congress. Delivered principal address Bohemian National Hall, Cleveland. Active in Lenin memorial meeting in Public Hall, Cleveland, on January 18,1948. No record of party membership in Ohio.
 

 John C. Kennedy. Assistant director, Conservatory of Music, Oberlin College. No record of party membership in Ohio.
 

 Dolph Barnett. No record of party membership in Ohio.
 

 Mort Epstein. No record of party membership in Ohio.
 

 
 *136
 
 Milton D. Tennenbaum. No record on this man.
 

 Elsie Zazrivy. Communist party member, Lakewood branch. Husband and brother members of Communist party since 1940. This person active member as well as her brother and husband.
 

 Nathan B. Zahm. Attorney. Member of Communist party. Former director Progressive Citizens Committee. Brains behind this group but not top Communist in Cleveland area.
 

 Louis Hahn. Fellow traveler. Attends secret Communist party meetings. No record Communist party membership in Ohio.
 

 Leonard H. Hinds. Attends Communist party membership rallies and also meetings of Young Communist League.
 

 David I. Sindell. Communist party member. Attorney. Ban for state representative in 1946. Endorsed by Communist Progressive Citizens Committee.
 

 Donald E. Stier. No record on this man.
 

 Of the 11 persons named in Houston’s report, threé of them are alleged to be members of the Communist party.
 

 All members of this court are in agreement that the record furnished by the secretary does not justify his finding that the Ohio Wallace-for-President Committee is not entitled to have a place on the ballot because of noncompliance with Section 4785-100a, General Code.
 

 The Wallace group consists of at least approximately 46,000 people who signed the nominating petitions, and the statute we are considering provides that the
 
 group
 
 must not advocate directly or indirectly the overthrow, by force or violence, of our government, and that it must not do the other things prohibited by the statute.
 

 The fact that three members of the group belong to
 
 *137
 
 the Communist party, if true, without any showing either that they personally advocate the overthrow of our government by force, or do or have done any of the prohibited acts, does not destroy or impair the effect of the affidavit filed pursuant to Section 4785-100a, General Code. .
 

 ■ One who would attempt by any means to overthrow the government by force would be a traitor and there would be justification for dealing with him in accordance with the enormity of his offense. The government has the inherent power to defend and protect itself.
 

 To advocate an entire change in our form of government is an entirely different matter.
 

 Article Y of the Constitution of the United States provides that two-thirds of both houses of Congress may propose amendments to the Constitution, or, on the application of the legislatures of two-thirds of the states, Congress shall call a convention for proposing amendments, and when any amendments proposed by either method are ratified by the legislatures of three-fourths of the states or by conventions in three-fourths thereof, according to the mode of ratification proposed by Congress, the amendments become parts of the Constitution.
 

 The Constitution can be changed in any manner except that no state, without its consent, shall ever be deprived of its equal suffrage in the Senate.
 

 If one can imagine that the American people would be so complacent and inert as to allow such a thing to take place, it would be possible constitutionally to so amend the Constitution- as to practically substitute a Communist form of government for the beneficent representative form we now have. As a matter of fact, although the original Constitution contains only seven articles, it has 21 amendments.
 

 
 *138
 
 The provision for amending the Constitution is one of the strongest reasons why all who believe in representative government, with an equal participation therein of all free people, should ever be on the alert to protect and defend its present ideals and to resist all efforts for change which is not in accord with those ideals. However, it is a matter of common knowledge that there are Communists who do not wish to overthrow our government by force but who desire to accomplish the ends they have in view by constitutional methods.
 

 There is no showing in the record before the secretary that any one connected with the Ohio Wallace-for-President Committee advocates the overthrow of the government by force, and the fact that some members among its many thousands may belong to the Communist party or that Communists may advocate the election of Wallace, is no proof that the affidavit filed in accordance with Section 4785-100a, General Code, was not filed in good faith or that it is not efficacious for the purpose for which it was filed.
 

 We agree with the argument of the Attorney General that a court will not ordinarily substitute its judgment for that of an administrative official when the finding and determination of such administrative official involves only questions of a ministerial character, unless in making such finding and determination the official abused his discretion or acted arbitrarily or oppressively in the premises. In other words, there must be some substantial evidence to support the finding and determination.
 

 This court is committed to the proposition that it will not substitute its judgment, as to inferences to be drawn from evidence, for that of a board or official to which or to whom was committed the obligation to find the facts in a matter, unless the finding is manifestly against the weight of the evidence or is not
 
 *139
 
 sustained by any substantial evidence. We do not hold that in the present case the secretary was obligated to have a hearing or to give opportunity to the Wallace committee to answer any charges made against its group or to cross-examine 'any witnesses, but we do hold that there must be in the record of the investigation by the secretary substantial facts or evidence to ^overcome the presumption of the good faith or honesty of an affiant whose affidavit fully complies upon its face with the provisions of Section 4785-100a, General Code, and, as hereinbefore indicated, there is no substantial or sufficient evidence in the record to justify the secretary in finding and certifying that the Ohio Wallace-for-President Committee is not entitled to a place on the ballot because the requirements of Section 4785-100a have not been complied with.
 

 In case No. 31498, the finding of the secretary is reversed.
 

 We come now to a consideration of case No. 31496, and, since there is no dispute as to the facts in this case, it involves only an interpretation of certain election statutes.
 

 All election statutes should be liberally interpreted in favor of the right to vote according to one’s belief or free choice, for that right is a part of the very warp and woof of the American ideal and it is a right protected by both the constitutions of the United States and of the state.
 

 Although a large majority of our people hold allegiance to the two major political parties in this nation and believe that free government is most efficiently perpetuated through a two-party system, nevertheless there are millions of independent voters who should always be given an equal right of suffrage with party members. There should be no discrimination because of a disagreement as to political principles or policies,
 
 *140
 
 as long as those who disagree are loyal and obedient to the Constitution. The proper spirit was eloquently expressed by the great French philosopher and writer, Francois M. A. Voltaire, when he wrote in one of his letters to Helvfetius, “I disapprove of what you say, but I will.defend to the death your right to say it.”
 

 Obviously, the General Assembly may impose reasonable restrictions upon the rights of its citizens to have the names of nominees printed on the official ballot. The dictates of common sense support reasonable restrictions, for, otherwise, the size of the ballots and the expensive costs thereof would tend to defeat the very purposes for which elections are held.
 

 As said by the court of
 
 dernier
 
 resort of Maryland in the case of
 
 Munsell
 
 v.
 
 Hennegan,
 
 182 Md., 15, 22, 31 A. (2d), 640, 146 A. L. R., 660, “the weight of authority, with which we agree, is that electors should have the fullest opportunity to vote for candidates of any political party, and while this right, in cases where the public furnishes the ballots, may be restricted by the dictates of common sense, and by considerations of convenience in the size of the ballots, and by considerations of excessive costs, such restrictions will not be upheld when they are destructive of freedom of choice by the voters.”
 

 Under the law, party candidates for elective state positions are ordinarily nominated in a primary, but Section 4785-91, General Code, provides as follows:
 

 “In addition to nominations of candidates of political parties for election to offices to be voted for at the next following general election, independent candidates for election to offices to be voted at such general election may be nominated by nominating petitions. The nominating petition nominating a candidate, as herein provided for, may consist of one or more separate petition papers, and each such nominating petition containing signatures of electors of more than one
 
 *141
 
 county shall consist ó'f separate petition papers each of which shall contain signatures of electors of only one county. Each nominating petition herein provided for shall be signed by qualified electors of the-state, district, county, township, municipality or other-subdivision of the state in which the candidate designated therein would be a candidate for election as am officer thereof, not less in number than one per cent off the number of electors who voted for governor at the next preceding general election for the office of governor in the state or in the respective district, county, township, municipality or other subdivision; provided, however, that no such nominating petition shall be accepted for filing or filed if it appears on its face to contain signatures aggregating in number more than twice the minimum aggregate number of signatures required by law; and provided, that in a petition for the nomination of a candidate for election to an office to be voted for by the electors of the state such petition shall contain the signatures of at least one hundred electors from each of at least thirty counties in the state, and that the total number of signatures of electors from any one county shall not be in excess of one-fourth of the total number of signatures required on the petition; and provided, that in a petition for the nomination of a candidate for election to an office to be voted for by the electors of a district smaller than the state but larger than a county, such petition shall contain the signatures of at least ten electors from each of at least one-half of the several counties of such district.
 

 “At the time of filing a nominating petition * * * the candidate * * # shall pay to the election official * * * a fee * *
 

 Pursuant to the above section, the relators have tendered nominating petitions containing not only
 
 *142
 
 their names as candidates for presidential electors but the names of Henry A. Wallace as a candidate for president and Glen H. Taylor as a candidate for vice-president of the United States. If this latter fact does not vitiate the petitions, the relators have taken every preliminary step required by law to become independent candidates for the offices of presidential electors of the state of Ohio.
 

 In the brief of the Attorney General representing respondent it is stated:
 

 “In light of the above, we conceive it to be our duty to the court to state that, in our opinion, independent candidates for election to the office of presidential elector may be nominated by nominating petitions and that when so nominated, the names of such candidates shall be considered as filed in the office of Secretary of State. ’ ’
 

 Section 4785-107, General Code, provides:
 

 “On the presidential ballot shall be printed the names of the candidates for election to the offices of president and vice-president of the United States, nominated as such by the national conventions of those political parties to which delegates and alternates were elected at the next preceding primary election.
 

 “Such ballots shall have printed across the top thereof, and below the stubs, the words: ‘ Official Presidential Ballot.’
 

 “The names of such candidates ■ of each such political party shall comprise the ‘ticket’ of such political party. The ticket of each such political party shall be printed in a separate vertical column on the ballot. At the top of each such party column shall be printed, upon a shaded background, the emblem of the political party whose ticket is printed in such column. Immediately below such emblem shall be a blank circular space three-fourths of an inch in diameter enclosed
 
 *143
 
 by a heavy black line and surrounded by the words: ‘To vote a straight ticket place “X” within this; circle. ’ Immediately below such circle and within heavy horizontal lines across the width of the column shall be printed in capital letters the name of the political party, whose emblem is printed in such column, followed by the word: ‘Ticket.’ In a rectangular space immediately below the name of the political party shall be printed the names of the candidates of such party for election to the office of president and vice-president, respectively, of the United States, nominated as such as above provided. The name of the candidate for president shall be printed!; above the name of the candidate for vice-president.. Above the name of the candidate for president, andl within such rectangular space, shall be printed the words: ‘For President.’ . Immediately below the name of the candidate for president and above the name of the candidate for vice-president, within the same rectangular space, shall be printed the words: ‘For Vice-President.’ One blank rectangular space shall be printed at the left of the enclosed rectangular space in which the names of the candidates for and the titles of the offices of president and vice-president are printed. * * * ”
 

 It will be seen from a perusal of the above section that on the presidential ballot, so far as political parties are concerned whose candidates for president and vice-president have been nominated by national conventions of those parties to which delegates and alternates were elected at the next preceding primary election, only the names of the candidates for president and vice-president appear.
 

 Section 4785-74, General Code, provides for the holding of state conventions by political parties composed of delegates and alternates who shall be elected as such at the primary election held in the year 1948
 
 *144
 
 and each fourth year thereafter, as well as in the year 1950 and each fourth year thereafter.
 

 : With reference to the conventions to be held in 1948 and each fourth year thereafter the section provides :
 

 !.' “At each such state convention of each political party persons shall be nominated as candidates for election as presidential electors to he voted for at the nest succeeding general election, and the state platform of such party for such year shall be formulated.
 

 ¡ ■■“Within five days after the holding of each such convention the chairman and secretary thereof shall certify in writing to the Secretary of State the names of all persons nominated at such convention as candidates for election as presidential electors.”
 

 ■ ■ Under Section 4785-131, General Code, as to the candidates for presidential electors of the political parties which have nominated candidates for president aiid vice-president in national conventions to which delegates and alternates from Ohio have been chosen at the primary in the presidential year, a vote for the candidates for president and vice-president of either one of the parties is a vote for the electors who have been nominated by the state convention of the party which nominated the presidential and vice-presidential candidates voted for.
 

 ■•;The candidates for presidential electors nominated by the state conventions of such political parties do not have their names on the presidential ballot. Under the statutes the only names of candidates for president and vice-president which can appear on the presidential ballot in Ohio are the names of the candidates of the political parties nominated in conventions as hereinbefore described.
 

 . Since Henry A. Wallace and Glen H. Taylor were not nominated for president and vice-president in a national convention to which delegates and alternates
 
 *145
 
 chosen at the preceding state primary were selected, under our statutes their names cannot appear upon the presidential ballot.
 

 This leaves us with another question.
 

 The relators have taken all the preliminary necessary steps for their nomination as presidential electors. Presidential electors are state officers. Section 4785-91,
 
 supra,
 
 provides for the nomination of independent candidates for election to offices to be voted for at the next following general election and relators have complied with that section. In this curious situation how must the statutes be interpreted?
 

 We must remember that no citizen votes directly for candidates for president and vice-president of the United States. As provided in 'Section 1, Article II of the Constitution of the United States, “each state shall appoint, in such manner as the legislature thereof may direct, a number of electors, equal to the whole number of senators and representatives to which the state may be entitled in the Congress: but no senator or representative, or person holding an office of trust or profit under the United States, shall be appointed an elector.” (It is conceded that no one of the relators in the present case is a senator or representative or holds an office of trust or profit under the United States.)
 

 Under the provisions of the Twelfth Amendment to the Constitution of the United States, “the electors shall meet in their respective states, and vote by ballot for president and vice-president, one of whom, at least, shall not be an inhabitant of the same state with themselves; * * * and they shall make distinct lists of all persons voted for as president, and of all persons voted for as vice-president, and of the number of votes for each, which lists they shall sign and certify, and transmit sealed to the seat of the government of the United States, directed to the president of the Senate.”
 

 
 *146
 
 According to the federal Constitution a presidential elector may vote for any person he pleases for president or vice-president provided that person be a natural born citizen of the United States, shall have attained the age of 35 years and been 14 years a resident within the United States. It logically follows that, although the Ohio law provides for the placing of the names of political party candidates for president and vice-president upon the presidential ballot, those votes cast for either set of those candidates are not votes for them at all but are simply votes for the presidential electors who have been chosen by the state convention of the party which nominated the set of candidates for which the vote is marked on the ballot. A ballot marked for a presidential and vice-presidential set of candidates named on the presidential ballot is a vote for them only as a symbol for a group of electors nominated by the state convention of the party which nominated the candidates for president and vice-president, the names of which electors do not appear on the ballot.
 

 Under the Ohio statutes, candidates for president and vice-president who were not nominated by party conventions as hereinbefore described are not entitled to have their names appear upon the presidential ballot.
 

 An entirely different question arises when we consider the right of persons to have their names printed upon the presidential ballot as independent candidates for presidential electors. Ohio is entitled to 25 presidential electors to be elected at the 1948 general election. Each one of the 25 elected may vote as he pleases for any person eligible for the office of president or vice-president of the United States. It is only by force of a moral obligation, not a legal one, that the presidential electors pledged to certain candidacies fulfill their pledges after election.
 

 
 *147
 
 Since the office of presidential elector is a state office, since relators have so far properly qualified under the law to be independent candidates for such state office, and since there is nothing in the law prohibiting their names from appearing upon the presidential ballot as independent candidates for presidential electors, it seems obvious that they have a right to have their names so printed. Any other conclusion would result in the ridiculous and absurd situation of having candidates properly and legally nominated for state offices but with a prohibition against their names appearing on the ballot.
 

 In the interpretation of statutes, it is the duty of the courts, if’possible, to give them an interpretation and construction which will accord with common sense and reason and not result in a grotesque absurdity.
 

 It has been argued that the nominating petitions of relators, a copy of one of which is attached to the petition in the present case, are void because they include not only the names of relators as candidates for the office of presidential elector together with the acceptance of each one of them of the nomination for that office, but contain the names of Henry A. Wallace as a candidate for president and Glen H. Taylor as a candidate for vice-president with the acceptance of each one of them for the nomination for the office for which he purports to be a nominee.
 

 It is argued that the approximately 46,000 signers of the nominating petitions may not have signed them except for the names of Wallace and Taylor upon them and that, therefore, the validating of the nominating petitions of the relators without the names of Wallace and Taylor is impossible.
 

 The majority of this court does not agree with that contention.
 

 The nominating petition reads:
 

 “We, the undersigned qualified electors of the state
 
 *148
 
 of Ohio, *
 
 *
 
 * hereby nominate the following independent candidates,
 
 * *
 
 * as candidates for election to the respective offices in the state of Ohio, set opposite their respective names, to be voted for at the election nest hereafter to be held.”
 

 Then follow the name of Wallace for president of the United States, the name of Taylor for vice-president of the United States, and then the individual names of the 25 relators for presidential elector.
 

 Since the federal Constitution makes no provision for a citizen to vote for a candidate for president or vice-president of the United States but such officers are elected by presidential electors chosen in a manner as the legislatures of the several states may provide, and since under the law of Ohio the voters choose the presidential electors by symbolically voting, for the presidential and vice-presidential candidates of the political parties which qualify as hereinbefore described or by voting for the presidential electors directly who are independent candidates, we hold that the signers of the nominating petitions for relators have prima facie placed relators in nomination for presidential electors, irrespective of their inability to nominate either Wallace or Taylor for the offices of president and vice-president.
 

 In view of the conclusions to which we have come, the finding of the Secretary of State involved in case No. 31498 is reversed and set aside, and the prayer of relators in case No. 31496 is granted in part, to the effect that a writ of mandamus issue to the respondent as Secretary of State and as chief election officer of the state to accept and file the nominating petitions for presidential electors of the state of Ohio tendered to him, and to further act upon them in accordance with law and this opinion.
 

 Writ allowed in case No. 31496.
 

 Finding reversed in case No. 31498.
 

 
 *149
 
 Weygandt, C. J., Hart, Zimmerman and Sohngen, JJ., concur.
 

 Matthias, J., concurs in case No. 31498 but dissents in case No. 31496.
 

 Turner, J., dissents.