THE STATE EX REL. COLVIN ET AL. *v.* BRUNNER, SECY. OF STATE.

[Cite as *State ex rel. Colvin v. Brunner,*
120 Ohio St.3d 110, 2008-Ohio-5041.]

(No. 2008–1813—Submitted September 29, 2008—Decided September 29, 2008.)

**Per Curiam.**

{¶ 1} This is an expedited election action for a writ of mandamus to, among other things, compel the secretary of state to issue a directive to the county boards of elections that they must void any applications for absentee ballots accepted by election officials after the registration of persons but before the 30–day registration period has passed and to advise the boards of elections that 30 days must elapse following registration before an absentee-ballot application may be accepted from the registered person.

{¶ 2} After construing the pertinent constitutional and statutory provisions, including Section 1, Article V of the Ohio Constitution, and R.C. 3503.01, 3503.06, 3509.02, 3509.03, and 3509.04, we hold that respondent, the secretary of state, correctly instructed boards of elections that an otherwise qualified citizen must be registered to vote for 30 days as of the date of the election at which the citizen offers to vote in order to be a qualified elector entitled to apply for and submit an absentee ballot at the election, and that the citizen need not be registered for 30 days before applying for, receiving, or completing an absentee ballot for the election. Therefore, because relators cannot establish either a clear legal right to the requested extraordinary relief or a clear legal duty on the part of the secretary of state to provide it, we deny the writ.

### Directive 2008–63

{¶ 3} On August 13, 2008, respondent, Secretary of State Jennifer Brunner, issued Directive 2008–63 to all county boards of elections. In this directive, the secretary of state provided the following instructions to boards of elections for processing voter-registration applications received the week immediately preceding the voter-registration deadline:

{¶ 4} "It is anticipated that the November 4, 2008, election will be the first election for which many Ohioans will register to vote, and other Ohioans will have

recently changed their addresses in boards of elections records. A significant number of those new and changed registrations will be generated by voter registration drives conducted up to the registration deadline on October 6, 2008.

{¶ 5} " * * *

{¶ 6} "Consequently, boards of elections can expect to receive large numbers of new and changed voter registrations, in the week immediately preceding the voter registration deadline for the 2008 general election, October 6, 2008. * * * Because part of that week coincides with the beginning of the absentee voting period for that election, the boards also should expect to receive large numbers of absentee ballot applications along with the registration applications. * * *

{¶ 7} " * * *

{¶ 8} " * * * [T]here are several days before the 2008 general election during which a person may appear at the board of elections office and simultaneously submit for that election applications to register to vote or to update an existing registration and to request an absentee ballot. As discussed above, a board of elections must first obtain from the person who presents himself or herself to vote during this period a completed voter registration or change of address form.

{¶ 9} *"Boards of elections are required to develop procedures to immediately register the applicant and issue an absentee ballot to the newly registered elector of the county at the time of registration,* reserving the right to delay registration and immediate absentee voting if a board is not satisfied as to the validity of the application and the applicant's qualifications. Boards of elections utilizing satellite locations for early in-person absentee voting should develop sufficient procedures to enable them to comply with this directive as they would if in-person absentee voting were taking place at the board's office." (Emphasis added.)

{¶ 10} The secretary of state also issued a memorandum in which she reiterated that Directive 2008–63 "[r]equires boards to develop procedures to immediately register an applicant and issue an absentee ballot to the newly registered elector of the county at the time of registration [d]uring the overlap period." The secretary of state additionally repeated that boards reserved the right "to delay registration and immediate absentee voting if a board is not satisfied as to the validity of the application and the applicant's qualifications."

### Opinions of Prosecuting Attorneys

{¶ 11} Under R.C. 309.09(A), a county prosecuting attorney acts as the legal advisor for the county board of elections. Between August 25 and September 5, 2008, the prosecuting attorneys for Holmes, Miami, and Madison Counties advised their local boards of elections that Directive 2008–63 should be disregarded as unsupported by law to the extent that it orders boards of elections to permit same-day registration and absentee voting. According to the secretary of

state, the boards of elections in Holmes and Miami Counties have indicated that they will follow the secretary's directive. Madison County's procedure for registration and absentee voting during the overlap period is the subject of a pending federal lawsuit.

## Directives 2008–91 and 2008–92

{¶ 12} On September 11, 2008, the secretary of state issued Directives 2008–91 and 2008–92 to the boards of elections. In Directive 2008–91, the secretary of state again noted that "at least a five-day 'overlap' period exists during which a voter may register to vote and receive an absentee ballot when registration and the ballot request are made in person at the board of elections or at its satellite office established for in person absentee voting." In Directive 2008–92, the secretary of state ordered that all previous directives, which would include Directives 2008–63 and 2008–91, were effective on September 12, 2008, the date of an amendment to R.C. 3501.053 classifying directives as either temporary or permanent, "unless subsequently and specifically superseded, revoked or replaced by a subsequent directive of the Secretary of State, whether temporary or permanent."

## Expedited Election Case

{¶ 13} Relators, Rhonda L. Colvin and C. Douglas Moody, are qualified electors of the state of Ohio. On September 12, 2008, relators filed this expedited election action for a writ of mandamus to compel Secretary of State Brunner to "issue a Directive to the County Boards of Election[s] that they must void any applications for absent voters' ballots that were accepted by the election official[s] following the registration of voters and prior to the lapsing of the thirty (30) day required period under Ohio law" and to "issue a clarifying Directive to the County Boards of Elections reiterating that thirty (30) days must elapse, consistent with the Revised Code, before an application for absent voter's ballot may be accepted by the election official following the registration of a voter, and clarifying that Directive 2008–63 should be construed consistent with Ohio law and does not change or modify the requirement under Ohio law that thirty (30) days must elapse before an application for an absent voter's ballot may be accepted by the election official following the registration of a voter." The secretary of state filed an answer, and the parties submitted evidence and briefs pursuant to the expedited election schedule in S.Ct.Prac.R. X(9).

{¶ 14} This cause is now before the court for its consideration of the merits.

## Motion to Strike[1]

{¶ 15} Relators have filed a motion to strike the amicus curiae memorandum of Iraq and Afghanistan Veterans of America and Veterans for America. We grant the motion and strike the memorandum because the memorandum was not served by personal service, facsimile transmission, or e-mail, as required by the Rules of Practice, and there is not enough time to allow an extension of briefing for proper service. See, e.g., S.Ct.Prac.R. X(8) and (9), VI(6), and XIV(2)(A)(1), (B)(3), and (D)(2). Service by mail in an expedited election case is not acceptable. See *State ex rel. McCord v. Delaware Cty. Bd. of Elections*, 106 Ohio St.3d 346, 2005-Ohio-4758, 835 N.E.2d 336, ¶ 19.

## Jurisdiction

{¶ 16} The secretary contends that this court lacks subject-matter jurisdiction over relators' mandamus claim because it is simply a disguised action for a declaratory judgment that Directives 2008–63, 2008–91, and 2008–92 are unlawful and for a prohibitory injunction preventing the secretary of state from implementing the directives.

{¶ 17} "It is axiomatic that 'if the allegations of a complaint for a writ of mandamus indicate that the real objects sought are a declaratory judgment and a prohibitory injunction, the complaint does not state a cause of action in mandamus and must be dismissed for want of jurisdiction.'" *State ex rel. Obojski v. Perciak*, 113 Ohio St.3d 486, 2007-Ohio-2453, 866 N.E.2d 1070, ¶ 13, quoting *State ex rel. Grendell v. Davidson* (1999), 86 Ohio St.3d 629, 634, 716 N.E.2d 704.

{¶ 18} "We have applied this jurisdictional rule to expedited election cases by examining the complaint to determine whether it actually seeks to prevent, rather than compel, official action." *State ex rel. Evans v. Blackwell*, 111 Ohio St.3d 437, 2006-Ohio-5439, 857 N.E.2d 88, ¶ 20; *State ex rel. Reese v. Cuyahoga Cty. Bd. of Elections*, 115 Ohio St.3d 126, 2007-Ohio-4588, 873 N.E.2d 1251, ¶ 13.

{¶ 19} Although some of the relief requested by relators could be interpreted to seek the prevention of the application of the secretary of state's challenged directives, relators primarily seek to compel the secretary to comply with her statutory duties to provide appropriate instructions consistent with election laws.

{¶ 20} As relators observe, we have expressly recognized that if the secretary of state "has, under the law, misdirected the members of the boards of elections as to their duties, the matter may be corrected through the remedy of mandamus." *State ex rel. Melvin v. Sweeney* (1950), 154 Ohio St. 223, 226, 43 O.O. 36, 94 N.E.2d 785. If the secretary's "advice [to the boards of elections] is an

---

1. We do not address the secretary of state's motion to strike the amicus curiae brief of Representative Wolpert, because our judgment renders it moot.

erroneous interpretation of the election laws there must be some remedy to correct the error and to require proper instructions in lieu of those erroneously given." Id. at 225, 43 O.O. 36, 94 N.E.2d 785.

{¶ 21} The secretary claims that we subsequently overruled or clarified our holding in *Melvin* in *State ex rel. Hodges v. Taft* (1992), 64 Ohio St.3d 1, 591 N.E.2d 1186. In *Hodges*, we denied a writ of mandamus to compel the secretary of state to reject a statewide initiative petition because the secretary had no legal duty to reject the petition because of the alleged verification defects or to direct the boards of elections to do so. Id. at 8, 591 N.E.2d 1186. In so holding, we observed:

{¶ 22} "While a writ cannot issue against the Secretary of State for lack of a clear legal duty, it is apparent that the advice given in respondent Taft's Directive No. 91–40 regarding circulator compensation statements is contrary to the commands of R.C. 3519.06 concerning verification. It would be unrealistic to contend that the boards of elections could ignore the secretary's advice; there is authority that the boards were required to follow it. * * * On the other hand, the circulator statement requirements of R.C. 3519.05 and 3519.06 may, as *amicus curiae* Ohio Citizen Action argues, be an unwarranted restriction or limitation on the right of initiative prohibited by Section 1g, Article II [of the Ohio Constitution]. The answer to these issues does not, however, lie in the issuance of a writ absent the necessary grounds therefor. They may be addressed in an action for declaratory judgment pursuant to R.C. Chapter 2721. Indeed, the prohibitive relief requested by relators is more suited to declaratory judgment or injunction than to mandamus, which is a command to perform an affirmative act." Id. at 8, 591 N.E.2d 1186.

{¶ 23} *Hodges*, however, did not purport to either overrule or clarify *Melvin*. In fact, our holding in *Melvin* is not even discussed. Notably, in *Hodges*, we did not determine whether the secretary's challenged directive was correct. Id. at 8, 591 N.E.2d 1186. And the primary focus of our opinion in *Hodges* was on the secretary's lack of any statutory duty to reject the petition for the claimed verification defects. Id. at 6–7, 591 N.E.2d 1186. Nor did *Hodges*, unlike the case here, involve an election that was only a few weeks away. Under these circumstances, we conclude that *Hodges* did not overrule or limit our previous holding in *Melvin*.

{¶ 24} Therefore, in accordance with our holding in *Melvin*, we reject the secretary's argument and find that we have jurisdiction to consider relators' mandamus claim.

### Laches

{¶ 25} The secretary of state and some of the amici curiae next argue that laches bars relators' mandamus claim. "If relators in election cases do not

exercise the utmost diligence, laches may bar an action for extraordinary relief." *State ex rel. Craig v. Scioto Cty. Bd. of Elections,* 117 Ohio St.3d 158, 2008-Ohio-706, 882 N.E.2d 435, ¶ 11.

{¶ 26} Relators knew or should have known about the secretary of state's Directive 2008–63 around the time it was issued on August 13. Yet they waited 30 days until September 12 to file this expedited election case to challenge the propriety of that directive and subsequently issued directives. See *State ex rel. Landis v. Morrow Cty. Bd. of Elections* (2000), 88 Ohio St.3d 187, 189, 724 N.E.2d 775 ("we have held that a delay as brief as *nine days* can preclude our consideration of the merits of an expedited election case" [emphasis sic] ). Their claim that the directive was ambiguous until it was reiterated in the September 11 issuance of Directive 2008–91 and 2008–92 appears specious.

{¶ 27} But "we generally require a showing of prejudice before we apply laches to bar a consideration of the merits of an election case." *State ex rel. Brinda v. Lorain Cty. Bd. of Elections,* 115 Ohio St.3d 299, 2007-Ohio-5228, 874 N.E.2d 1205, ¶ 11. "Normally, this prejudice in expedited election cases occurs because relators' delay prejudices respondents by making the case an expedited election case under S.Ct.Prac.R. X(9), which restricts respondents' time to prepare and defend against relators' claims, or impairs boards of elections' ability to prepare, print, and distribute appropriate ballots because of the expiration of the time for providing absentee ballots." *State ex rel. Willke v. Taft,* 107 Ohio St.3d 1, 2005-Ohio-5303, 836 N.E.2d 536, ¶ 18.

{¶ 28} Relators' delay in filing this expedited election case did not cause this case to become an expedited election case under S.Ct.Prac.R. X(9), which provides an accelerated schedule for the submission of a response, evidence, and briefs when an original action relating to a pending election is filed within 90 days before the election. This case would still be an expedited election case governed by S.Ct.Prac.R. X(9) even if relators had filed this case on the same day that the secretary issued Directive 2008–63. Therefore, the secretary's ability to prepare and defend against relators' mandamus claim has not been compromised by the delay.

{¶ 29} Nor did the delay impair any election board's ability to prepare, print, and distribute appropriate ballots because of the expiration of the absentee-ballot deadline. This case was fully briefed before the passage of that deadline. See *Brinda,* 115 Ohio St.3d 299, 2007-Ohio-5228, 874 N.E.2d 1205, ¶ 13, and cases cited therein. In fact, this case differs from other cases in which we have applied laches to bar a consideration of the merits of an expedited election action concerning an issue or candidate on an election ballot because it involves the propriety of the *absentee voting* itself. That is, if relators' claim has merit, they would establish that the absentee voting directed by the secretary is unlawful.

Under these circumstances, a consideration of the merits of the claim is warranted. See id. at ¶ 15, quoting *State ex rel. Becker v. Eastlake* (2001), 93 Ohio St.3d 502, 505, 756 N.E.2d 1228 (" 'the fundamental tenet of judicial review in Ohio is that courts should decide cases on their merits' ").

{¶ 30} Therefore, laches does not bar relators' mandamus claim.

## Mandamus

{¶ 31} "To be entitled to the requested writ, relators must establish a clear legal right to the requested relief, a corresponding clear legal duty on the part of the secretary of state to provide it, and the lack of an adequate remedy in the ordinary course of the law." *State ex rel. Heffelfinger v. Brunner*, 116 Ohio St.3d 172, 2007-Ohio-5838, 876 N.E.2d 1231, ¶ 13. Given the proximity of the November 4 election as well as the recognized propriety of mandamus as an appropriate remedy to compel the secretary of state to issue instructions to boards of elections correcting previous erroneous instructions, relators have established that they lack an adequate remedy in the ordinary course of law. Id.; see *Melvin*, 154 Ohio St. at 226, 43 O.O. 36, 94 N.E.2d 785.

## General Duties of the Secretary of State

{¶ 32} The secretary of state is the chief election officer of the state. R.C. 3501.04. The secretary of state has many election-related duties, including the duties to "[i]ssue instructions by directives and advisories to members of the boards as to the proper methods of conducting elections," "[p]repare rules and instructions for the conduct of elections," "[p]rescribe the form of registration cards, blanks, and records," and "[c]ompel the observance by election officers in the several counties of the requirements of the election laws." R.C. 3501.05(B), (C), (F), and (M).

{¶ 33} Relators contend that the secretary of state has a duty under these provisions to issue a new directive correcting her previous directives insofar as they require boards of elections to permit newly registered persons to apply for, receive, and submit absentee ballots before they are registered for at least 30 days.

## Requirements to Apply for, Receive, and Submit Absentee Ballots

{¶ 34} Absentee ballots "shall be printed and ready for use on the thirty-fifth day before the day of the election," R.C. 3509.01, which is September 30 for the November 4 election. The registration deadline for that election is Monday, October 6. See R.C. 3503.19(A) and 1.14. The secretary's directives were addressed to this overlap period by authorizing newly registered electors within this period to apply for, receive, and submit absentee ballots.

{¶ 35} "[A]ny qualified elector desiring to vote absent voter's ballots at an election shall make written application for those ballots to the director of elections of the county in which the elector's voting residence is located." R.C. 3509.03. The application must contain certain items, including the "address at which the elector is registered to vote" and a "statement that the person requesting the ballots is a qualified elector." R.C. 3509.03(C) and (G).

{¶ 36} "Upon receipt by the director of elections of an application for absent voter's ballots that contain[s] all of the required information * * *, the director, if the director finds that the applicant is a qualified elector, shall deliver to the applicant * * * proper absent voter's ballots." R.C. 3509.04(B). "Any qualified elector may vote by absent voter's ballots at an election." R.C. 3509.02(A).

### Qualified Electors: 30–Day Registration Requirement Applies to Date of Election

{¶ 37} For purposes of an elector's qualification to apply for an absentee ballot, an elector's qualification to vote by absentee ballot, and an elections director's determination whether an applicant is a qualified elector, R.C. 3501.01(N) defines "elector" or "qualified elector" as "a person having the qualifications provided by law to be entitled to vote." See also R.C. 3501.01(O) (" 'Voter' means an elector who votes at an election").

{¶ 38} Relators cite Section 1, Article V of the Ohio Constitution and R.C. 3503.01 in support of their contention that persons must be registered for 30 days before they are qualified to apply for an absentee ballot or to vote by absentee ballot at an election, or for elections officials to determine if they are entitled to an absentee ballot.

{¶ 39} Section 1, Article V of the Ohio Constitution provides:

{¶ 40} "*Every citizen* of the United States, of the age of eighteen years, *who* has been a resident of the state, county, township, or ward, such time as may be provided by law, and *has been registered to vote for thirty days, has the qualifications of an elector, and is entitled to vote at all elections.*" (Emphasis added.)

{¶ 41} R.C. 3503.01(A) similarly provides:

{¶ 42} "*Every citizen of the United States who* is of the age of eighteen years or over and who has been a resident of the state thirty days immediately preceding the election at which the citizen offers to vote, is a resident of the county and precinct in which the citizen offers to vote, and *has been registered to vote for thirty days, has the qualifications of an elector and may vote at all elections in the precinct in which the citizen resides.*" (Emphasis added.)

{¶ 43} In construing these provisions, we must "read words and phrases in context according to the rules of grammar and common usage." *State ex rel. Lee*

*v. Karnes,* 103 Ohio St.3d 559, 2004-Ohio-5718, 817 N.E.2d 76, ¶ 23; see also *Smith v. Leis,* 106 Ohio St.3d 309, 2005-Ohio-5125, 835 N.E.2d 5, ¶ 57, quoting *State v. Jackson,* 102 Ohio St.3d 380, 2004-Ohio-3206, 811 N.E.2d 68, ¶ 14 (" 'Generally speaking, in construing the Constitution, we apply the same rules of construction that we apply in construing statutes' ").

{¶ 44} For the following reasons, after so construing these and related provisions, we hold that—in accordance with the secretary of state's directives—an otherwise qualified citizen must be registered to vote for 30 days as of the election in which the citizen offers to vote in order to be a qualified elector, but need not be registered for 30 days before applying for, receiving, or completing an absentee ballot.

{¶ 45} First, neither Section 1, Article V of the Ohio Constitution nor R.C. 3503.01(A) expressly ties the 30–day registration period to any of the dates relators advocate, i.e., the dates newly registered persons apply for, receive, or submit absentee ballots. We cannot generally add a requirement that does not exist in the Constitution or a statute. See *State ex rel. Columbia Reserve Ltd. v. Lorain Cty. Bd. of Elections,* 111 Ohio St.3d 167, 2006-Ohio-5019, 855 N.E.2d 815, ¶ 32 ("We will not add a requirement that does not exist in the statute").

{¶ 46} Second, because these provisions are silent concerning the date by which a citizen must have been registered for the specified 30 days to be entitled to vote at an election, we may apply the in pari materia rule of construction. *State ex rel. Herman v. Klopfleisch* (1995), 72 Ohio St.3d 581, 585, 651 N.E.2d 995 ("The *in pari materia* rule of construction may be used in interpreting statutes where some doubt or ambiguity exists"). Under this rule, statutes that relate to the same subject matter must be construed in pari materia so as to give full effect to the provisions. See *State ex rel. Choices for South–Western City Schools v. Anthony,* 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, ¶ 46.

{¶ 47} R.C. 3503.06 pertains to the same subject matter and specifies the registration and residency periods for voting and certain other acts by expressly providing that the determinative date for the 30–day registration requirement is "at the time of the next election":

{¶ 48} "No person shall be entitled to vote at any election * * * unless the person is registered as an elector and will have resided in the county and precinct where the person is registered for at least thirty days *at the time of the next election.*" (Emphasis added.)

{¶ 49} Construing R.C. 3503.06 in pari materia with Section 1, Article V of the Ohio Constitution and R.C. 3503.01, we conclude that the person must be registered for at least 30 days at the time of the November 4 election in order to be entitled to vote at that election. Notably, R.C. 3503.06 makes no distinction between entitlement to vote in person or by absentee ballot at an election, so its

plain, broad language must apply to both. See *State ex rel. Ohio Democratic Party v. Blackwell,* 111 Ohio St.3d 246, 2006-Ohio-5202, 855 N.E.2d 1188, ¶ 14, quoting *Consumer Electronics Assn. v. Fed. Communications Comm.* (C.A.D.C. 2003), 347 F.3d 291, 298 ("As United States Supreme Court Chief Justice John G. Roberts Jr. previously observed in a unanimous opinion for the United States Court of Appeals for the District of Columbia Circuit, 'the Supreme Court has consistently instructed that statutes written in broad, sweeping language should be given broad, sweeping application' "); see also R.C. 3503.07 ("Each person who will be of the age of eighteen years or more at the next ensuing November election, who is a citizen of the United States, and who, if he continues to reside in the precinct until the next election, will at that time have fulfilled all the requirements as to length of residence to qualify him as an elector shall, unless otherwise disqualified, be entitled to be registered as an elector in such precinct"); *In re Protest Filed by Citizens for Merit Selection of Judges, Inc.* (1990), 49 Ohio St.3d 102, 104, 551 N.E.2d 150 ("In order to be entitled to vote, therefore, a person must qualify under Section 1, Article V of the Ohio Constitution and R.C. 3503.07, and then register in accordance with R.C. 3503.06 *et seq.*").

{¶ 50} Relators suggest in their reply brief that R.C. 3503.06 is inapplicable because it "does not purport to be an exhaustive statement of the requirements to be a qualified elector." But although the statute does not—as relators observe—refer to constitutional or R.C. 3503.01 requirements that a qualified elector be a citizen of the United States and at least 18 years old, it *does specifically refer to the registration and residency required for voting and, in that context, expressly designates the time of the next election as the applicable date.*

{¶ 51} Third, an elector who submits an absentee ballot does not actually vote at an election until the ballot is tabulated on election day. See R.C. 3509.06 (providing procedure for counting absentee ballots on election day); *Millsaps v. Thompson* (C.A.6, 2001), 259 F.3d 535, 546 (election official's mere receipt of a ballot under state's early voting statute did not constitute an election prior to the date specified by federal law). Therefore, an otherwise qualified elector is authorized by R.C. 3509.02(A) to vote by absentee ballot at the November 4 election as long as the elector will have been registered for 30 days by the date of the election. See also R.C. 3503.06.

{¶ 52} Fourth, relators' claim that the pertinent provisions require that the elector or absentee-ballot applicant be a qualified elector at, for example, the time of application is belied by one of the statutes. In their reply brief, relators assert that these provisions are tied to electors who are presently qualified, not to electors who will be qualified at some future date. See R.C. 3501.01(N) (defining a "qualified elector" as a "person *having* the qualifications provided by law to be entitled to vote" [emphasis added] ); R.C. 3509.03(G) (requiring that an applica-

tion for an absentee ballot contain a "statement that the person requesting the ballots *is* a qualified elector" [emphasis added] ).

{¶ 53} Conspicuously absent from this argument in relators' reply brief, however, is any citation to R.C. 3503.01, which relators claimed in their initial merit brief to "clearly set forth" the "qualifications to be entitled to vote in the State of Ohio." That statute specifies that one of the requirements for being a qualified elector is that the person "has been a resident of the state thirty days *immediately preceding the election at which the citizen offers to vote*," which would require an absentee-ballot applicant to state that the applicant "*is* a qualified elector" under R.C. 3509.03(G), even though at that time the applicant could not necessarily know that he or she would continue to reside within the state for the 30–day period before the election. (Emphasis added.)

{¶ 54} In *State ex rel. Walsh v. Ashtabula Cty. Bd. of Elections* (1992), 65 Ohio St.3d 197, 202, 602 N.E.2d 638, the court similarly held, albeit in a different context, that a 30–day residency requirement need not be applied at the time a candidate filed a statement of candidacy including a declaration under R.C. 3513.261 that the candidate "is an elector qualified to vote for the office the candidate seeks."

{¶ 55} Furthermore, R.C. 3503.011 specifies that a person who will not be 18 years old until the date of the next general election is permitted to vote in the primary election preceding the general election: "At a primary election every qualified elector who is or will be on the day of the next general election eighteen or more years of age, and who is a member of or is affiliated with the political party whose primary election ballot he desires to vote, shall be entitled to vote such ballot at the primary election."

{¶ 56} Thus, relators' contention lacks merit, and the pertinent statutes do not prevent the date of the election from being used as the applicable date for the 30–day registration period provided in R.C. 3503.06.

{¶ 57} Fifth, insofar as R.C. 3503.06 does not remove the ambiguity concerning the date on which a person must have been registered to vote for 30 days to be entitled to vote by absentee ballot, the secretary's administrative construction of the provisions supports her interpretation that the 30–day registration requirement is satisfied if the voter meets that requirement on election day. See R.C. 1.49(F). The secretary of state's construction is reasonably supported by the pertinent provisions, and in accordance with well-settled precedent, the court must defer to that reasonable interpretation. See *State ex rel. Heffelfinger v. Brunner,* 116 Ohio St.3d 172, 2007-Ohio-5838, 876 N.E.2d 1231, ¶ 57, quoting *Whitman v. Hamilton Cty. Bd. of Elections,* 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 22 ("This result 'is consistent with our duty to defer to the Secretary of State's interpretation of election law if it is subject to two different,

but equally reasonable, interpretations' "); *Rust v. Lucas Cty. Bd. of Elections*, 108 Ohio St.3d 139, 2005-Ohio-5795, 841 N.E.2d 766, ¶ 13.

{¶ 58} Sixth, the secretary of state's interpretation of the pertinent provisions avoids the unreasonable or absurd result of having a shifting qualification date at which the 30–day registration requirement is met based on the different acts involved, i.e., 30 days before (1) the date an absentee-ballot application is executed, (2) the date elections officials determine whether an application is legally sufficient, (3) the date a ballot is submitted, and (4) the date a person votes an absentee ballot. This might inject confusion into the absentee-voting process, whereas the method of using the election date is supported by both the plain language of R.C. 3503.06 and the secretary's reasonable construction of the pertinent constitutional and statutory provisions. See *State ex rel. Essig v. Blackwell*, 103 Ohio St.3d 481, 2004-Ohio-5586, 817 N.E.2d 5, ¶ 28 (courts have a duty to construe constitutional and legislative provisions to avoid unreasonable or absurd consequences).

{¶ 59} Seventh, we need not consider as evidence two newspaper articles submitted by relators to support their "concerns" about fraud caused "by unlawful votes by unqualified electors," including college students and homeless people. See *State ex rel. Miller v. Cuyahoga Cty. Bd. of Elections*, 103 Ohio St.3d 477, 2004-Ohio-5532, 817 N.E.2d 1, ¶ 15, quoting *State ex rel. Flagner v. Arko* (Feb. 5, 1998), Cuyahoga App. Nos. 72779 and 87263, 1998 WL 45342, *3, quoting *Heyman v. Bellevue* (1951), 91 Ohio App. 321, 326, 48 O.O. 404, 108 N.E.2d 161 (" 'newspaper article cannot be accepted as [summary-judgment] evidence; it is "hearsay of the remotest character" ' "). In fact, neither college students nor homeless people are per se ineligible to vote. See *State ex rel. May v. Jones* (1968), 16 Ohio App.2d 140, 144, 45 O.O.2d 427, 242 N.E.2d 672 ("Courts have generally recognized a student's right to vote at his college residence when the student's actions and conduct in the school town manifest an intent to make that place his new home"); Annotation, *Residence of Students for Voting Purposes* (1972), 44 A.L.R.3d 797, 804, 1972 WL 31971, Section 2[b] ("a student possessing the capacity to do so may change his voting residence to the place where he attends school by manifesting, in a manner independent of his mere presence, the requisite intention to make that place his home for all relevant domestic, social, and civil purposes"); R.C. 3503.02(I) ("If a person does not have a fixed place of habitation, but has a shelter or other location at which the person has been a consistent or regular inhabitant and to which the person has the intention of returning, that shelter or other location shall be deemed the person's residence for the purpose of registering to vote").

{¶ 60} Eighth, relators erroneously assert that because some prosecuting attorneys have advised their local boards of elections not to follow the secretary's

directives permitting registration and absentee voting within the overlap period, the secretary's directives have fostered unconstitutional, unequal treatment of absentee ballots. See *Bush v. Gore* (2000), 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (manual recounts ordered by state supreme court for presidential election, without specific standards to determine the intent of the voter, violated Equal Protection Clause). The secretary's directives, however, attempted to establish uniformity by giving effect to all of the applicable constitutional and statutory provisions. Any disparate standards were engendered by the opinions of the handful of prosecuting attorneys who agreed with relators' interpretation of these provisions and instructed their local election boards not to follow the directives.

{¶ 61} Ninth, in their reply brief, relators contend that the secretary of state's directives may conflict with the Help America Vote Act and R.C. 3503.15. But neither relators nor respondents raised this issue in their initial briefs; relators are thus forbidden to raise this new argument in their reply brief. See *State ex rel. Grounds v. Hocking Cty. Bd. of Elections,* 117 Ohio St.3d 116, 2008-Ohio-566, 881 N.E.2d 1252, ¶ 24. Nor does this contention have merit. The secretary's construction of the pertinent statutes does not affect her maintenance of a statewide voter-registration database established and maintained pursuant to R.C. 3503.15; that database would continue to list the dates that persons had been registered to vote.

{¶ 62} Finally, the secretary of state's construction is consistent with our duty to liberally construe election laws in favor of the right to vote. See *Wilson v. Kennedy* (1949), 151 Ohio St. 485, 493, 39 O.O. 301, 86 N.E.2d 722, quoting *State ex rel. Beck v. Hummel* (1948), 150 Ohio St. 127, 139, 37 O.O. 435, 80 N.E.2d 899 (" 'All election statutes should be liberally interpreted in favor of the right to vote according to one's belief or free choice, for that right is a part of the very warp and woof of the American ideal and it is a right protected by both the constitutions of the United States and of the state' ").

{¶ 63} Therefore, because the secretary of state's interpretation of the pertinent provisions concerning qualified electors for purposes of the 30–day registration requirement is reasonable, is supported by the language of the applicable provisions, including R.C. 3503.06, avoids unreasonable or absurd results, would not necessarily result in the asserted widespread fraud, and is consistent with our duty to liberally construe election laws in favor of the right to vote, we defer to the secretary's reasonable interpretation and hold that her directives permitting registration and absentee voting within the overlap period is proper. Notably, although relators attempt to portray this case as being limited to same-day registration and absentee voting during the few days of the period between the start of absentee voting and the registration deadline for the November 4

election, the relief they request is much broader and would void any absentee ballot when the application was executed less than 30 days after the applicant had registered to vote. The applicable election laws do not require this draconian construction.

## Conclusion

{¶ 64} Because relators can thus establish neither a clear legal right to the requested relief nor a corresponding clear legal duty on the part of the secretary to provide the requested relief, we deny the writ of mandamus. By so holding, we need not consider other issues raised by the secretary of state, including whether relators' advocated construction of the pertinent provisions would violate the Constitution or federal law and whether mandamus is inappropriate to control the secretary of state's "discretion" in issuing instructions.

Writ denied.

MOYER, C.J., and PFEIFER, WOLFF, and LANZINGER, JJ., concur.

SLABY, O'DONNELL, and CUPP, JJ., dissent.

WILLIAM H. WOLFF JR., J., of the Second Appellate District, sitting for LUNDBERG STRATTON, J.

LYNN C. SLABY, J., of the Ninth Appellate District, sitting for O'CONNOR, J.

---

**O'DONNELL, J., dissenting.**

{¶ 65} I respectfully dissent.

{¶ 66} In *State ex rel. Walsh v. Ashtabula Cty. Bd. of Elections* (1992), 65 Ohio St.3d 197, 199, 602 N.E.2d 638, we acknowledged that the Ohio Constitution is the place to begin to determine whether a person has the qualifications of an elector and that Section 1, Article V of the Constitution "allows anyone to vote who has been registered for thirty days of more, if the other qualifications have been met." In deciding that case, we looked to the election statutes to supplement the constitutional definition of a qualified elector, not to modify it.

{¶ 67} The Ohio Constitution circumscribes the qualifications of an elector by prescribing who may vote in the state of Ohio.

{¶ 68} Section 1, Article V of the Ohio Constitution provides:

{¶ 69} "Every citizen of the United States, of the age of eighteen years, who has been a resident of the state, county, township, or ward, such time as may be provided by law, *and has been registered to vote for thirty days*, has the qualifications of an elector, and is entitled to vote at all elections." (Emphasis added.)

{¶ 70} Notably, the Constitution uses the present perfect form of the verb *"has been* registered to vote for thirty days" (emphasis added), which conflicts with the majority's use of the future perfect form, *"will have been* registered for 30 days by the date of the election" (emphasis added). Moreover, this provision was added to the Constitution by initiative petition in response to the General Assembly's enactment of a law allowing same-day registration and voting. See Am.Sub.S.B. No. 125, 137 Ohio Laws, Part I, 305, 316–318. The constitutional provision was approved by voters of Ohio in November 1977 by a significant margin (more than 60 percent). 137 Ohio Laws, Part II, 4155. This history provides a clear indication of the will of the citizens of Ohio that voters be registered in this state for a time certain prior to voting.

{¶ 71} In this case, relators seek a writ of mandamus to compel the secretary of state to issue a countermanding directive to the local boards of elections in conformity with the Ohio Constitution and the statutes of Ohio relating to absentee voting. In that regard, R.C. 3509.02 is specifically tailored to describe those who are permitted to vote in this fashion. Without ambiguity, R.C. 3509.02(A) states:

{¶ 72} *"Any qualified elector* may vote by absent voter's ballots at an election." (Emphasis added.)

{¶ 73} Similarly, R.C. 3509.02(B) states:

{¶ 74} *"Any qualified elector* who is unable to appear at the office of the board of elections * * * may vote by absent voter's ballots in that election as specified in division (G) of section 3503.16 of the Revised Code." (Emphasis added.)

{¶ 75} Thus, in order to either obtain or cast an absent voter's ballot, one must first be a qualified elector. Pursuant to the plain language of Section 1, Article V of the Ohio Constitution, a citizen is required to have been registered to vote for 30 days before being "a qualified elector." Consequently, a person who has *not* been registered to vote for 30 days does *not* have the qualifications of an elector and is not a "qualified elector" in the state of Ohio. Because this is a constitutional qualification, "such qualifications can be altered only by amendment to the Constitution." *State ex rel. Taylor v. French* (1917), 96 Ohio St. 172, 117 N.E. 173, paragraph one of the syllabus.

{¶ 76} At issue in this case is Directive 2008–63, which the secretary of state has issued to the county boards of elections:

{¶ 77} "[T]here are several days before the 2008 general election during which a person may appear at the board of elections office and simultaneously submit for that election applications to register to vote or to update an existing registration and to request an absentee ballot. * * *

{¶ 78} *"Boards of elections are required to develop procedures to immediately register the applicant and issue an absentee ballot to the newly registered elector of the county at the time of registration,* reserving the right to delay registration and immediate absentee voting if a board is not satisfied as to the validity of the application and the applicant's qualifications. Boards of elections utilizing satellite locations for early in-person absentee voting should develop sufficient procedures to enable them to comply with this directive as they would if in-person absentee voting were taking place at the board's office." (Emphasis added.)

{¶ 79} The secretary of state's directive proposes to permit individuals who do not have the constitutional qualifications of an elector to obtain and cast an absent voter's ballot. In my view, it directly conflicts with the Ohio Constitution and the applicable, relevant state statute designating the right to vote by absent voter's ballot.

{¶ 80} The United States Supreme Court recognized in *Storer v. Brown* (1974), 415 U.S. 724, 730, 94 S.Ct. 1274, 39 L.Ed.2d 714, that "there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." Ohio's statutory scheme is designed to bring order to the elections process by providing a framework of reasonable deadlines and requirements that allow candidates to place their names on the ballot and allow citizens to register to vote. But whatever role these statutes play in an election, they cannot eviscerate the constitutional definition of a qualified elector.

{¶ 81} "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." *Wesberry v. Sanders* (1964), 376 U.S. 1, 17, 84 S.Ct. 526, 11 L.Ed.2d 481. Neither the Ohio Constitution nor the Ohio election statutes prohibit any electors from voting in this election. Upon becoming a qualified elector, a person may choose to vote in person or by absentee ballot, within the boundaries of the statutes regulating absentee voting. See R.C. 3509.03.

{¶ 82} The majority states that a person who casts an absentee voter's ballot does not "actually vote at an election until the ballot is tabulated on election day." ¶ 51, supra. That assertion defies reality.

{¶ 83} The act of voting occurs when a voter relinquishes dominion and control over a ballot, which has been marked by the voter, by hand-delivering the ballot to a precinct worker at a polling place, by mailing an absentee ballot to the board of elections, or by delivering an absentee ballot to the board of elections. At that point, a voter has irrevocably committed to the votes cast and has no ability to retrieve the ballot or alter the choices. For the voter, the act of voting is complete at that time. The tabulation of a vote is a process that occurs subsequent to the voter's act of voting.

{¶ 84} To obtain a writ of mandamus, relators must demonstrate a clear legal right to relief, a clear legal duty on the part of the secretary of state to issue constitutional and lawful election directives, and no adequate remedy in the ordinary course of law for the issuance of an unconstitutional and/or unlawful directive. *State ex rel. Heffelfinger v. Brunner,* 116 Ohio St.3d 172, 2007-Ohio-5838, 876 N.E.2d 1231, ¶ 13. In this case, relators have met that burden. As we emphasized in *State ex rel. Melvin v. Sweeney* (1950), 154 Ohio St. 223, 225, 43 O.O. 36, 94 N.E.2d 785, when the secretary gives the boards of elections "an erroneous interpretation of the election laws there must be some remedy to correct the error and to require proper instructions in lieu of those erroneously given." Moreover, we stated in *State ex rel. Brinda v. Lorain Cty. Bd. of Elections,* 115 Ohio St.3d 299, 2007-Ohio-5228, 874 N.E.2d 1205, ¶ 30, that "[w]e need not defer to the secretary of state's interpretation [if] it is unreasonable and fails to apply the plain language" of the law.

{¶ 85} As the secretary's directive is in direct conflict with Section 1, Article V of the Ohio Constitution and is contrary to the statutory precondition for voting by absentee ballot, it is unconstitutional and unlawful and therefore unreasonable.

{¶ 86} Accordingly, I would issue a writ of mandamus forthwith commanding the secretary of state to publish a countermanding directive to all boards of elections to clarify and to direct that no county board of elections may issue an absent voter's ballot to any person who has not been registered to vote for 30 days, because that person is not a qualified elector in the state of Ohio by virtue of the Ohio Constitution.

SLABY and CUPP, JJ., concur in the foregoing opinion.

---

Chester, Willcox & Saxbe, L.L.P., Donald C. Brey, Elizabeth J. Watters, and Deborah A. Scott, for relators.

Nancy Hardin Rogers, Attorney General, and Richard N. Coglianese, Damian W. Sikora, Aaron Epstein, Michael J. Schuler, and Dennis P. Smith Jr., Assistant Attorneys General, for respondent.

Benesch, Friedlander, Coplan & Aronoff, L.L.P., and William M. Todd, urging granting of the writ for amicus curiae State Representative Larry Wolpert.

Thomas C. Drabick Jr., urging denial of the writ for amicus curiae Ohio American Federation of Labor–Congress of Industrial Organizations.

Hunter, Carnahan, Shoub & Byard and Michael J. Hunter, urging denial of the writ for amicus curiae District 1199, Health Care and Social Service Union, Service Employees International Union.

Altshuler Berzon, L.L.P., Stephen P. Berzon, Stacey M. Leyton, Barbara J. Chisholm, and Peter E. Leckman, urging denial of the writ for amicus curiae Ohio American Federation of Labor–Congress of Industrial Organizations and District 1199, Health Care and Social Service Union, Service Employees International Union.

Meredith Bell–Platts, Neil Bradley, Carrie L. Davis, Jeffrey M. Gamso, Daniel P. Tokaji, Paul Moke, Teresa James, Richard Saphire, Brenda Wright, Jon Greenbaum, Bob Kengle, Jennifer R. Scullion, and Matthew Morris, urging denial of the writ for amici curiae 1Matters; American Civil Liberties Union of Ohio; American Civil Liberties Union Foundation, Inc., Voting Rights Project; Demos; Lawyers' Committee for Civil Rights Under Law; League of Women Voters of Ohio; Project Vote; Northeast Ohio Coalition for the Homeless; and United States Hispanic Leadership Institute, Inc.